The AMERICAN LEGION,
Plaintiff–Appellant,

v.

Richard G. MATTHEW, Defendant–
Appellee.

No. 98–1092.

United States Court of Appeals,
Seventh Circuit.

Submitted May 6, 1998.

Decided May 15, 1998.

Jan M. Schroeder, Peterson, Johnson & Murray, Milwaukee, WI, Richard C. Browne, Winston & Strawn, Washington, DC, Philip B. Onderdonk, Jr., American Legion, Indianapolis, IN, for Plaintiff–Appellant.

Richard G. Matthew, Fond du Lac, WI, for Defendant–Appellee.

Before CUMMINGS, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

EASTERBROOK, Circuit Judge.

Everyone recognizes the distinctive headgear of the French Foreign Legion: a cylindrical body with a flat top, a broad bill, and a flap at the rear to block the sun. Richard Matthew sells this style of cap, called a kepi. When he applied to register "The Legionaire" as a trademark for the kepi, he might have anticipated a reaction from France. What he got instead was opposition from The American Legion, a veterans organization established by Congress after World War I, see 36 U.S.C. §§ 41–51, which claims exclusive rights to "Legionaire" and "Legionnaire"—the French, the Romans, and other sponsors of legions notwithstanding. The Trademark Trial and Appeal Board concluded that The American Legion uses the word "Legionnaire" to describe its members, not to denote the origin of any product, and that the sale of a hat dubbed "The Legionaire" would not cause any confusion about source. Although The American Legion sells or authorizes products such as jewelry, banners, and memorabilia bearing its name or emblem, just a handful use the word "Legionnaire", and then only to identify membership in the organization (e.g., a banner proclaiming "Welcome Legionnaires"). Judicial review of the TTAB's decision began in the district court, as 15 U.S.C. § 1071 permits, and the judge agreed with the Board that the kepi's name would not confuse consumers. This conclusion foreclosed any trademark claim under 15 U.S.C. § 1052. See *Zazú Designs v. L'Oréal, S.A.*, 979 F.2d 499 (7th Cir.1992). On appeal The American Legion all but concedes these points, if only because review of the Board's resolution of the confusion question is deferential. See *Spraying Systems Co. v. Delavan, Inc.*, 975 F.2d 387, 391 (7th Cir.1992); *Fleetwood Co. v. Hazel Bishop, Inc.*, 352 F.2d 841, 844 (7th Cir.1965).

What The American Legion now argues is that "Legionnaire" is a trade *name*, to which it has exclusive rights under § 1052(d) even if that word is not a trademark. Section 1052(d) says that a trademark may not be registered if it so resembles another "mark or trade name" that confusion is likely to ensue. Most of the time "trademark" and "trade name" operate as synonyms, *Walt-West Enterprises, Inc. v. Gannett Co.*, 695 F.2d 1050, 1054 at n. 6 (7th Cir.1982), but even when they are distinct the statutory definition of infringement remains. The American Legion's failure to prove confusion is fatal under § 1052(d) whether "Legionnaire" is a "name" or a "mark". Another statute, 15 U.S.C. § 1125(a), addresses a related possibility: confusion about sponsorship or approval, even when the mark does not mislead consumers about the source of the goods. See also *Illinois High School Ass'n v. GTE Vantage, Inc.*, 99 F.3d 244 (7th Cir.1996); *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200 (2d Cir. 1979); *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368 (5th Cir.1977); *HMH Publishing Co. v. Brincat*, 504 F.2d 713 (9th Cir.1974). Twenty of The American Legion's state newspapers use LEGIONNAIRE in their mastheads. This shows, we are told, that "Legionnaire" is one of the organization's trade names. Yet this does not demonstrate any prospect of confusion from the appellation Matthew has given to his kepi. He does not use The American Legion's emblems or any mark similar to those emblems (contrast *Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004 (5th Cir. 1975)) and explicitly disclaims sponsorship by The American Legion. Cf. *August Storck K.G. v. Nabisco, Inc.*, 59 F.3d 616 (7th Cir.1995). The kepi's association with the French Foreign Legion might lead some consumers to infer a link to that organization, but it would hardly raise in reasonable minds a suspicion that The *American* Legion was behind the project. Without confusion about source, sponsorship, or affiliation, there is no possible claim under either § 1052(d) or § 1125(a).

Perhaps The American Legion wishes that Congress had been more generous. Many of the patriotic or fraternal organizations chartered by Congress receive exclusive rights to words or phrases, which may be enforced without regard to the normal standards of trademark law. For example, the United States Olympic Committee has the exclusive right to commercial or promotional use of the word "Olympic". 36 U.S.C. § 380; see *San Francisco Arts & Athletics, Inc. v. United*

*States Olympic Committee*, 483 U.S. 522, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987). The Red Cross has exclusive rights to "Red Cross", see 18 U.S.C. § 706, and to fortify this exclusivity Congress prohibited newcomers from using the Swiss Confederation coat of arms, 18 U.S.C. § 708. The Boy Scouts, the Girl Scouts, 4-H Clubs, and many others have their protected words and phrases. E.g., 18 U.S.C. § 707, 36 U.S.C. §§ 27, 36. Congress did not forget The American Legion when carving up the lexicon. But what it received in 36 U.S.C. § 48 is the exclusive right to "The American Legion" and "American Legion." Not "Legionnaire," not "Legionaire," and not any other word. Protection beyond the scope of § 48 depends on trademark law plus 18 U.S.C. § 705, which makes it a crime to manufacture or sell a veterans organization's badge, medal, or emblem (or a printed facsimile of one) without that organization's approval. Matthew did not duplicate any badge, medal, or emblem of The American Legion, so he is free to call his kepi "The Legionaire."

Affirmed.