In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 06-2897

JONATHAN SEGAL, on behalf of himself
and derivatively on behalf of nominal parties
GEISHA LLC, a Delaware Limited Liability
Company, and OSSS HOSPITALITY LLC,
a Delaware Limited Liability Company,

*Plaintiff-Appellant,*

*v.*

GEISHA NYC LLC, a Delaware Limited Liability
Company, OSSS HOSPITALITY NYC, LLC,
a New York Limited Liability Company, and
RICK WAHLSTEDT, ET AL.,

*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 57—**Joan B. Gottschall**, *Judge.*

---

ARGUED NOVEMBER 30, 2007—DECIDED FEBRUARY 22, 2008

---

Before BAUER, RIPPLE, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* This case concerns the national expansion of Japonais, a popular Chicago restaurant located in the River North restaurant district. Japonais founder, Jonathan Segal, appeals from an order dismissing his complaint against Geisha NYC LLC ("Geisha NYC"),

and others. Segal's sole federal claim—a derivative claim he asserts on behalf of Geisha LLC ("Geisha Chicago") and OSSS Hospitality LLC ("Hospitality Chicago")—alleges that the defendants misappropriated the Japonais name and design in violation of the Lanham Act, *see* 15 U.S.C. § 1125(a). The district court dismissed this federal count, and then dismissed the remainder of the complaint under 28 U.S.C. § 1367(c)(3). Because Geisha NYC's trademark use was authorized, we affirm these dismissals.

**I. HISTORY**

After learning that his co-founders expanded Japonais to new locations without notifying him or allowing him to participate, Segal filed suit against Rick Wahlstedt, Jeffrey Beers, Miae Lim, and the entities that own and operate Japonais New York. Segal's complaint alleged the following facts, which we must accept as true. *See St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007).

In early 2003, Segal and Wahlstedt jointly developed the concept for Japonais, an up-scale restaurant and lounge that would serve a fusion of Japanese and European cuisine. To implement this concept, Segal and Wahlstedt hired a culinary expert (Lim), an architect (Beers), and others. Collectively, Segal, Wahlstedt, Lim, and Beers are the four "founders" of Japonais Chicago, and all four of them anticipated opening restaurants based on the Japonais concept throughout the United States.

After agreeing upon the concept and plans for its implementation and national expansion, the founders began their business venture with Japonais Chicago. On the advice of counsel, they created two limited liability companies (LLCs), organized under Delaware law, that are responsible for owning and operating Japonais Chicago.

One of these LLCs, Geisha Chicago, owns the Japonais Chicago restaurant, as well as all intellectual property related to the Japonais name and design. According to Geisha Chicago's operating agreement, the other LLC, Hospitality Chicago, is Geisha Chicago's "Managing Member." Hospitality Chicago is also the only member listed on the membership schedule filed with Geisha Chicago's operating agreement. Section 6.1.1 of this operating agreement vests Hospitality Chicago with complete plenary authority over Geisha Chicago—among other things, Hospitality Chicago makes all decisions and takes all actions for Geisha Chicago and possesses the exclusive power to acquire, utilize, or dispose of any asset of the company. Section 6.1.1 also grants Hospitality Chicago the exclusive right to manage the business of Geisha Chicago.

The founders became the only members of Hospitality Chicago, pursuant to its separate operating agreement. In drafting Hospitality Chicago's operating agreement, the founders included provisions that anticipated the national expansion of Japonais. Section 6.2.1 of Hospitality Chicago's operating agreement provides that "if at least two" of the four founders "desire to open a restaurant in a location outside the greater Chicagoland area based upon the Restaurant's Concept (an Expansion)," these "expanding founders" could do so by delivering written notice to the others "setting forth the material terms of the Expansion as well as the terms and conditions pursuant to which the Non-Expanding Founders may invest in the Expansion." Section 6.2.2 of Hospitality Chicago's operating agreement defines the term "Concept," as a restaurant that is "substantially similar" that incorporates "the intellectual property of the Restaurant," which includes "the Restaurant's trade names, trade marks, service marks, trade symbols, emblems, signs, slogans, insignia, [and] copyrights . . . ."

Japonais Chicago received immediate national acclaim and financial success, and in 2006, Wahlstedt, Lim, and Beers opened additional Japonais restaurants in New York City and Las Vegas. The new restaurants in New York and Las Vegas utilized the trade dress and design of Japonais Chicago without offering compensation to Geisha Chicago or Hospitality Chicago. The expanding founders modeled the corporate structure of Japonais New York on that of Japonais Chicago by creating two new LLCs to own and operate Japonais New York: Geisha NYC and OSSS Hospitality NYC ("Hospitality NYC"). The expanding founders controlled Geisha NYC through their membership in Hospitality NYC.

Segal's complaint asserted ten state-law claims and only one federal claim—for trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a). The defendants filed a motion to dismiss in March 2006, which argued in part that Segal's trademark claims, including his federal Lanham Act claim, should be dismissed because sections 6.2.1 and 6.2.2 of Hospitality Chicago's operating agreement explicitly authorize the defendants' use of Japonais Chicago's intellectual property.

In June 2006, the district court agreed that the "clear and unambiguous" language of Hospitality Chicago's operating agreement expressly authorizes "any two Founders to expand the restaurant concept and to do so using the intellectual property of the Chicago restaurant." As such, the district court held that there could be no likelihood of confusion as to source or affiliation as a matter of law, and dismissed Segal's Lanham Act count under Fed. R. Civ. P. 12(b)(6). After dismissing Segal's sole federal cause of action, the district court relinquished its jurisdiction over Segal's pendent state-law claims under 28 U.S.C. § 1367(c)(3). Thereafter, Segal filed a separate action seeking relief in Illinois state court, and filed this appeal.

## II. ANALYSIS

On appeal, Segal argues that the district court erred by dismissing his Lanham Act count because he "adequately pled" the elements of the claim. Segal further contends that Hospitality Chicago's operating agreement was merely a contract intended to govern relations between the founders, and thus was not relevant to whether Geisha Chicago authorized the defendants' use of Japonais Chicago's intellectual property. Segal claims that only Geisha Chicago, "acting through its duly authorized members," can direct use of its intellectual property, and that the district court erred because Hospitality Chicago's operating agreement did not, and could not, authorize the New York entities' trademark use.

We will review the district court's dismissal of Segal's complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) *de novo*, accepting as true "all of the factual allegations contained in the complaint.*" St. John's United Church of Christ*, 502 F.3d at 625 (quoting *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007)). "We may affirm the dismissal only if the complaint fails to set forth 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). And in engaging in this review we may examine the operating agreements of Geisha Chicago and Hospitality Chicago because attachments to a complaint become part of it "for all purposes." Fed. R. Civ. P. 10(c); *see also, e.g.*, *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007); *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 731 n.3 (7th Cir. 2005).

Segal's initial assertion—that his complaint should not have been dismissed because he adequately pled the elements of his Lanham Act claim—confuses our civil-procedure jurisprudence and need not detain us for very

long. While it is clear that Federal Rule of Civil Procedure 8(a) requires that a complaint adequately plead facts to put a defendant on notice of the plaintiff's claim, *see Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007); *Twombly*, 127 S.Ct. at 1974, it is equally clear that a complaint that satisfies Rule 8(a)'s pleading requirements might still warrant dismissal under Rule 12(b)(6) if the facts pled cannot result in any plausible relief, *see Exelon Corp.*, 495 F.3d at 785 (upholding dismissal for failure to state a claim where arbitral award submitted with the complaint barred any plausible relief).

Contrary to Segal's second argument, it is obvious that both LLC operating agreements are wholly relevant to the question of whether Geisha NYC and Hospitality NYC were authorized to use Japonais Chicago's trademarks. Under Delaware law, an LLC operating agreement allows the members to delegate control over the company by contract. *See* Del. Code tit. 6, § 18-1101(b) ("It is the policy of this chapter to give the maximum effect to the principle of freedom of contract and to the enforceability of limited liability company agreements."); *see also Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 291 (Del. 1999) (equating the Delaware LLC Act with the Delaware Partnership Act, which accords partners "the broadest possible discretion" in drafting governing agreements). Therefore, we must examine Geisha Chicago's operating agreement to ascertain how Geisha Chicago distributes its corporate powers.

Here, Section 6.1.1 of Geisha Chicago's operating agreement delegates all of its corporate powers to Hospitality Chicago—its Managing Member and, indeed, its only member. Section 6.1.1 of Geisha Chicago's operating agreement also vests Hospitality Chicago with total control over the company's assets. In light of this express language in Geisha Chicago's operating agreement,

Hospitality Chicago has a clear mandate that allows it to authorize use of Japonais Chicago's intellectual property. Thus, the district court properly examined the provisions of Hospitality Chicago's operating agreement that contemplated expansion by the founders.

And we also agree with the district court that these provisions illustrate that the entities in control of Japonais New York were in fact authorized to use Japonais Chicago's intellectual property. Section 6.2.1 of Hospitality Chicago's operating agreement allows two founders to utilize the Japonais "Concept" in order to expand the restaurant nationally. Section 6.2.2 includes intellectual property in its definition of "Concept." Here, the entity defendants are controlled by three founders—Wahlstedt, Lim, and Beers—who employed the Japonais "Concept" when expanding the restaurant to New York and Las Vegas. Therefore, Hospitality Chicago's operating agreement authorized Japonais New York to use the Japonais trademarks.

Because Geisha Chicago authorized Geisha NYC to use Japonais Chicago's intellectual property, Segal's Lanham Act claim fails as a matter of law. In order to succeed on his Lanham Act claim, Segal must establish: (1) that Geisha Chicago owns a protectible trademark, and (2) that use of this mark by Japonais New York is likely to cause confusion among consumers. *See* 15 U.S.C. § 1125; *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 897 (7th Cir. 2001). But where the trademark holder has authorized another to use its mark, there can be no likelihood of confusion and no violation of the Lanham Act if the alleged infringer uses the mark as authorized. *See ITOFCA, Inc. v. MegaTrans Logistics, Inc.*, 322 F.3d 928, 940 (7th Cir. 2003) ("A licensee infringes the owner's copyright if its use exceeds the scope of its license." (internal quotation marks and citations omitted)); *Am. Legion v. Matthew*, 144 F.3d 498, 499 (7th Cir. 1998) ("Without confusion about

source, sponsorship, or affiliation, there is no possible claim under . . . § 1125(a)."); *see also McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1307 (11th Cir. 1998) ("[I]n order to prevail on a trademark infringement claim, a plaintiff must show that its mark was used in commerce by the defendant without the registrant's consent and that the unauthorized use was likely to deceive, cause confusion, or result in mistake.").

"The use of similar names to denote the identical product of a single seller is no more confusing than the fact that two bottles of Coca-Cola carry the same name." *AmCan Enters. v. Renzi*, 32 F.3d 233, 235 (7th Cir 1994). Likewise, here it is not confusing to restaurant patrons that Japonais New York and Japonais Las Vegas carry the same name as Japonais Chicago—by definition they are expanded locations of the same restaurant and share three of the same founders and a "Concept."

Finally, we note that Segal's complaint asserted that the district court had only supplemental jurisdiction over his pendent state-law claims. Because the district court properly dismissed Segal's sole federal-law claim and nothing bars Segal from pursuing his claims in state court, it was completely appropriate for the court to relinquish its jurisdiction over the remaining state-law claims under 28 U.S.C. § 1367(c)(3). *See also Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007) (citing *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-52 (7th Cir. 1994)).

## III. Conclusion

We therefore AFFIRM the district court's dismissal of Segal's complaint.