# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 05-3033

CROPLIFE AMERICA, INC., *et al.*,

*Plaintiffs-Appellants*,

*v.*

CITY OF MADISON, *et al.*,

*Defendants-Appellees*.

_____

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 04-C-0949-C—**Barbara B. Crabb**, *Chief Judge*.

_____

ARGUED DECEMBER 2, 2005—DECIDED DECEMBER 23, 2005

_____

Before BAUER, POSNER, and MANION, *Circuit Judges*.

POSNER, *Circuit Judge*. This appeal arises from a suit by producers and suppliers of "weed and feed" products against the City of Madison and the county (Dane) in which Madison is located. Weed and feed products are lawn-care products each granule of which contains both a herbicide and a substance, such as phosphorus, that fertilizes. Though not without its critics, this ingenious combination—"sold by the chemical industry to homeowners as the magic bullet of turf care," Douglas Green, *The Everything Lawn Care Book: From Seed to Soil, Mowing to Fertilizing—Hundreds of Tips for Growing a Beautiful Lawn* 81 (2001)—both "saves time and

labor" and provides "greater safety since there is less chance of an incorrect dosage [of pesticide] being applied." Jack E. Ingels, *Landscaping Principles and Practices* 415 (6th ed. 2004); Ingels, *Ornamental Horticulture: Science, Operations, and Management* 93 (3d ed. 2001). However, Madison and Dane County have enacted ordinances forbidding (with irrelevant exceptions) the sale or use of fertilizers that include more than trace amounts of phosphorus, Madison General Ordinances §§ 7.48(3), (6); Dane County Ordinances §§ 80.05, 80.07—as the plaintiffs' weed and feed products do. Though an excellent fertilizer, phosphorus is also a pollutant that "contribute[s] to excessive growth of algae and other undesirable aquatic vegetation in water bodies." John Randolph, *Environmental Land Use Planning and Management* 393 (2003); see also Henry F. Decker & Jane M. Decker, *Lawn Care: A Handbook for Professionals* 33-34 (1988). Dane County contains 102 lakes, of which nine have a surface area exceeding 2000 acres and one a surface area exceeding 10,000 acres. Wisconsin Department of Natural Resources, "Wisconsin Lakes Directory—Dane County," http://www.dnr.state.wi.us/org/water/fhp/lakes/county/Dane.htm (visited Dec. 12, 2005).

To comply with the ordinances, the plaintiffs have had to reconstitute their weed and feed products to eliminate the phosphorus. Invoking a variety of federal and state legal theories, their suit seeks a declaration that the ordinances are invalid. The defendants moved for summary judgment, which was granted. The only claim pressed in this appeal is that the ordinances are preempted by a Wisconsin state statute that, with irrelevant exceptions, forbids a city or county to "prohibit the use of or otherwise regulate pesticides." Wis. Stat. § 94.701(3)(a). Ordinarily the district court would relinquish jurisdiction over supplemental state-law claims when as in this case all federal claims (diversity of

citizenship is not alleged) were dismissed before trial. 28 U.S.C. § 1367(c)(3). But relinquishment in such circumstances is not mandatory, *id.*, unless the federal claims are frivolous (frivolous claims do not engage the jurisdiction of the federal courts, *Crowley Cutlery Co. v. United States*, 849 F.2d 273, 276-78 (7th Cir. 1988), and cases cited there); and the plaintiff's federal claims, based on the commerce clause and federal pesticide regulation, while weak, were not frivolous. And both sides want us to decide the state-law claim rather than protract the litigation.

The statutory definition of pesticides embraces herbicides, see Wis. Stat. § 94.67(25), and a regulation defines pesticide to include "a pesticide-fertilizer mixture." Wis. Admin. Code ATCP (Agriculture, Trade, and Consumer Protection) § 29.01(28). Therefore, the plaintiffs argue, their weed and feed products are pesticides, which Madison and Dane County may not regulate by specifying that the products are not to contain phosphorus, even though phosphorus is a fertilizer rather than a pesticide and there is no state preemption of local regulation of fertilizers.

Yet the plaintiffs themselves quote the provision of the Wisconsin statute that defines "fertilizer" to include "mixed fertilizers," in turn defined as any combination of "a fertilizer material and any other substance," Wis. Stat. § 94.64(1)(e), (*l*). And a regulation, parallel to the one that defines "pesticide" to include "a pesticide-fertilizer mixture," defines "combination products containing fertilizer" to include "a fertilizer-pesticide combination," Wis. Admin. Code ATCP §§ 40.02(3), (8), (11)—and, lest there be any doubt, adds that "'weed and feed' products are fertilizer-pesticide combinations." Wis. Admin. Code ATCP § 40.02(11) Note. So it seems that a weed and feed product is both a pesticide, which only the state can regulate, and a

fertilizer, which local government can regulate. (For further confirmation that weed and feed products are both pesticides and fertilizers, see Wis. Admin. Code ATCP § 40.02(29).) How can this be?

The answer is that the dual definition is necessary to avoid creating a regulatory loophole. If "pesticide" were not defined to include a mixed pesticide-fertilizer product, then a manufacturer of a pesticide might be able to get out from under regulation by mixing his pesticide with a fertilizer. And if "fertilizer" were not defined to include a mixed pesticide-fertilizer product, then a manufacturer of fertilizer might be able to get out from under regulation by mixing his fertilizer with a pesticide. The definition of both "pesticide" and "fertilizer" as including a mixture of the two preserves both state regulation of pesticides and local regulation of fertilizers. The state regulates the pesticide components of the mixed products, local government the fertilizer components.

Suppose a weed and feed product sold in Wisconsin contained atrazine, a herbicide, as well as phosphorus, a fertilizer. And suppose the state wanted to ban atrazine and Madison wanted to ban phosphorus. The definition of "pesticide" as including a pesticide mixed with a fertilizer would empower the state to ban atrazine in the product, and the definition of "fertilizer" as including a fertilizer mixed with a pesticide would empower Madison to ban phosphorus in the product because there is no state preemption of local fertilizer regulation. If "pesticide" were defined to exclude mixtures, the state would be helpless to deal with atrazine in a weed and feed product, while if "fertilizer" were defined to exclude mixtures, the city could not deal with the phosphorus in the product because (assuming "pesticide" was defined to include mixtures) the product

would just be a pesticide, and not also a fertilizer, and so the city and county would be preempted.

The plaintiffs complain that unless local regulation is preempted, they cannot sell a weed and feed product in Dane County without reconstituting the product to replace phosphorus with some other fertilizer. They have presented no evidence, however, that such reconstitution is infeasible, or even that it is costly. Indeed, they are selling the reconstituted product in Dane County. No doubt they prefer phosphorus to whatever they have substituted for it in the reconstituted product, or else they would have made the substitution voluntarily. But if phosphorus is indeed a pollutant with serious consequences for lakes (which the plaintiffs have made no effort to confute, although they have made some effort to downplay the polluting effect of their products, as by contending that "the waste from one adult goose contributes 13.76 ounces of phosphorus runoff per year or 68 times more than a typical lawn," though one might suppose that this would depend on where the goose spent his year), the plaintiffs will not be heard to complain.

The defendants point out, without contradiction, that it makes practical sense to allow local regulation of phosphorus because the effects differ from county to county depending on the number and importance of a county's lakes and other bodies of water, not to mention the number of geese and other contributors to phosphorus pollution. So our interpretation of the statute, which is the natural interpretation as a semantic matter and has the further virtue of closing a regulatory loophole, cannot be rejected on the ground that it produces absurd or unreasonable results, which the Wisconsin legislature is unlikely to have intended. Compare *Public Citizen v. U.S. Dept. of Justice*, 491 U.S. 440, 453-55 (1989); *Green v. Bock Laundry Machine Co.*,

490 U.S. 504, 527 (1989) (Scalia, J., concurring). Quite the contrary, it produces sensible results. See *Krzalic v. Republic Title Co.*, 314 F.3d 875, 879-80 (7th Cir. 2002); *United States v. Hilario*, 218 F.3d 19, 23 (1st Cir. 2000).

AFFIRMED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of
Appeals for the Seventh Circuit*