In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-2959

SHARP ELECTRONICS CORPORATION,

*Plaintiff-Appellant*,

*v.*

METROPOLITAN LIFE INSURANCE COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 0474—**Arlander Keys**, *Magistrate Judge.*

ARGUED APRIL 14, 2009—DECIDED AUGUST 18, 2009

Before KANNE, ROVNER, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* From 1997 until April 2, 2002, Sandra Rudzinski worked for Sharp Electronics Corporation. As a full-time employee, she was entitled to participate in a long-term group disability plan (the "Plan"), which was underwritten by Metropolitan Life Insurance Company ("MetLife"). The present controversy arose out of a lawsuit between Rudzinski and MetLife. Briefly, after Rudzinski stopped working for Sharp, she

applied for a conversion policy with MetLife to preserve her long-term disability coverage. MetLife denied her application. Rudzinski responded with a suit in federal court asserting that MetLife had wrongfully denied her benefits. Initially, MetLife was the sole defendant. During a settlement conference, however, MetLife represented to Rudzinski that one reason it had refused to pay her any long-term benefits was that Sharp had failed to make required payments to it on her behalf.

Based on this statement, Rudzinski filed an amended complaint adding Sharp as an additional defendant; she asserted that Sharp had breached its fiduciary duty to her and had interfered with her benefits. On July 19, 2006, following an unsuccessful motion to dismiss, Sharp filed a cross-claim against MetLife asserting that MetLife had breached a fiduciary duty it allegedly owed to Sharp under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, that MetLife was obliged to indemnify Sharp for certain expenses, and that MetLife was estopped from denying these obligations.

Although Rudzinski and Sharp reached a settlement and the district court entered judgment in favor of Rudzinski in her action against MetLife, Sharp's claim against MetLife remained pending. After Sharp filed an amended cross-claim, MetLife moved to dismiss for failure to state a claim. See FED. R. CIV. P. 12(b)(6). The district court granted that motion on July 9, 2008, and Sharp has now appealed from the judgment against it. We affirm.

**I**

Sharp adopted the MetLife long-term disability plan in 1997 as part of the welfare benefits package it furnished for its employees; the Plan was qualified under ERISA. Sharp was, at all relevant times, the Plan administrator and MetLife the Plan fiduciary. Pursuant to the Plan, Sharp was required to pay short-term disability benefits to eligible employees during a 180-day policy benefits elimination period. Thereafter, MetLife was required to pay long-term disability benefits to employees who met criteria specified in the Plan. Sharp was required under the Plan to pay premiums to MetLife for the benefit of its employees, but it had no responsibility to pay premiums for a person whose employment with Sharp had been terminated, unless the person was disabled and was within an elimination period at the time her employment ended.

On April 2, 2002, as a result of chronic fatigue, joint pain, and headaches, Rudzinski ceased active employment with Sharp. (Later, she was diagnosed with fibromyalgia.) As a participating member in the Plan, Rudzinski was eligible for both short-term and long-term disability benefits. Accordingly, following the cessation of her employment, she began receiving short-term disability benefits from Sharp and the 180-day elimination period began to run. Rudzinski also filed a claim with MetLife in which she requested long-term disability insurance benefits, to commence immediately upon the completion of the 180-day period.

On July 9, 2002, Sharp notified Rudzinski that if she did not return to active employment by July 31, 2002, she

would lose her job and Sharp would cease making payments on her behalf to MetLife for long-term disability benefits. Rudzinski did not return to work at Sharp, and, as promised, Sharp ended her employment effective July 31, 2002. Sometime prior to the deadline, Sharp informed Rudzinski that, if she did not return to work, she could preserve her long-term disability coverage with MetLife by obtaining a "conversion policy" and paying premiums on her own behalf as a non-employee. Rudzinski took the advice, applied to MetLife for a conversion policy, and paid the requisite premiums. After some time had passed, however, MetLife denied Rudzinski long-term disability benefits on the ground that she had a pre-existing disability at the time she applied for the conversion policy. Rudzinski then made a formal demand on MetLife for long-term disability benefits pursuant to the Plan. MetLife considered her demand and denied it, this time on the ground that she had not fulfilled the 180-day period that was supposed to precede long-term benefits.

Rudzinski then filed a claim in the district court pursuant to 29 U.S.C. § 1132(a)(1)(B), alleging that MetLife wrongfully denied her benefits. Approximately two years after Rudzinski filed her lawsuit, and more than two years after MetLife initially denied her claim for benefits, MetLife's lawyer let slip in a settlement conference that an additional reason why she did not qualify for benefits was that Sharp had discontinued payment of her long-term disability premiums following the termination of her employment. The Plan does not obligate Sharp to make premium payments for any employee once the person is no longer working for it. Based on this

representation from MetLife, Rudzinski amended her complaint to add Sharp as a defendant, alleging that Sharp violated 29 U.S.C. § 1140 by wrongfully interfering with her disability benefit rights under the Plan; violated its fiduciary duties to her; and misled her into believing that by obtaining a conversion policy and paying the necessary premiums, she could protect her rights to long-term disability benefits.

Sharp responded to Rudzinski's claim in two ways. First, it filed a Rule 12(b)(6) motion to dismiss for failure to state a claim; the district court denied that motion on April 27, 2006. Second, Sharp filed a cross-complaint against MetLife, alleging that (1) MetLife breached its fiduciary duties to Sharp under 29 U.S.C. §§ 1132(a)(2), 1132(a)(3), and 1109(a), when it stated in Rudzinski's presence that Sharp's nonpayment of premiums influenced its decision about her benefits; (2) MetLife was equitably estopped from relying on Sharp's alleged nonpayment as a reason for denying Rudzinski's benefits; and (3) if Sharp were found liable to Rudzinski on any of her claims, MetLife had to indemnify Sharp.

On January 16, 2007, Rudzinski voluntarily dismissed her claims against Sharp. This action left two claims pending in the district court: Rudzinski's claim against MetLife, and Sharp's cross-claim against MetLife. MetLife moved to dismiss Sharp's cross-claim. It argued with respect to Sharp's assertion that MetLife had breached a fiduciary duty that it owed to Sharp that it owed no such duty. MetLife also asserted that Sharp's indemnification claim was preempted by ERISA. On January 25, 2007,

the district court denied MetLife's motion to dismiss, holding that the question whether MetLife owed any fiduciary duty to Sharp was one of fact, and that Sharp had stated a cognizable claim for indemnification that was not necessarily preempted by ERISA. MetLife then filed an answer to the cross-claim, and in the meantime, the district court entered judgment in favor of Rudzinski on her claim against MetLife, finding that MetLife wrongfully denied her benefits.

That left Sharp's cross-claim against MetLife as the only remaining claim before the district court. At that stage, the parties consented to the resolution of the claim before a magistrate judge. See 28 U.S.C. § 636(c). The next event of any consequence occurred on April 4, 2008, when Sharp filed an amended cross-complaint raising seven different theories of recovery against MetLife: breach of fiduciary duty under ERISA, 29 U.S.C. §§ 1132(a)(2), 1132(a)(3), and 1109(a); indemnification; negligence; negligent inducement; negligent misrepresentation; abuse of process; and common law breach of fiduciary duty.

MetLife responded on April 25, 2008, with a motion to dismiss the entire cross-complaint under Rule 12(b)(6). MetLife asserted that all of the theories outlined in Sharp's amended pleading were based upon statements made during the course of litigation. Those statements, it maintained, were absolutely privileged and could not form the basis of any liability. MetLife also argued that Sharp lacked standing to pursue the claims, that the relief sought was not available to Sharp, that the claims were preempted

by ERISA, and that because Sharp had previously been dismissed from the case it could not recover damages, fees, or costs incurred in defending Rudzinski against MetLife. Sharp resisted these arguments on their merits and also contended that MetLife's motion was barred by the law of the case because the district court earlier had denied MetLife's motion to dismiss the cross-claims.

On July 9, 2008, the district court granted MetLife's motion, holding that the law of the case doctrine was inapplicable because the determination of MetLife's earlier motion to dismiss did not involve the claims as Sharp presented them in its amended cross-complaint. The court then held that, although the statement made by MetLife during the settlement conference was not privileged, MetLife's motion should be granted because MetLife had not breached any fiduciary duty to Sharp. The district court finally held that Sharp's remaining state-law claims are preempted by ERISA because, it thought, it would be impossible to resolve them without referring back to the Plan to determine the parties' obligations.

## II

On appeal, Sharp argues that the district court erred by failing to apply the law of the case doctrine and in granting MetLife's motion to dismiss. Sharp also argues that the district court erred when it determined that Sharp's state law claims were preempted by ERISA. We review a district court's dismissal of a complaint for failure to state a claim under FED. R. CIV. P. 12(b)(6) *de novo*,

accepting as true all of the factual allegations contained in the complaint. *Segal v. Geisha NYC LLC,* 517 F.3d 501, 504 (7th Cir. 2008). Dismissal is required if, taking the properly pleaded facts in that light, the complaint fails to describe a claim that is plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

### A

We begin with a brief word about Sharp's assertion that the district court acted inconsistently with the law of the case when it granted MetLife's motion to dismiss the amended cross-complaint. There are two reasons why this point is not well taken. First, the law of the case doctrine has little force when a higher court is reviewing decisions of a lower court. The doctrine reflects the idea that a single court should not revisit its earlier rulings unless there is a compelling reason to do so. It is designed to further consistency, to avoid constantly revisiting rulings, and to conserve judicial resources. *Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007). From the point of view of this court, the district court's first ruling is no more binding than any reconsideration of that ruling would be. Second, the case changed in any event between the two rulings, and the district court was free to take a new look at it. When the court initially denied MetLife's motion to dismiss, it was faced only with Sharp's fiduciary breach claims and its indemnification claim. The picture changed with Sharp's amended cross-complaint. There, Sharp repleaded its breach of fiduciary duty and indemnification claims. But it went on to drop

the equitable estoppel claim that was present in the original cross-complaint and to add five state law claims: negligence, negligent inducement, negligent misrepresentation, abuse of process, and common law breach of fiduciary duty. While it might have been useful for the judge to explain more fully why he was taking a fresh look at the case, we see no reason to belabor this point. Our review in any event is *de novo,* and so we think it best simply to proceed to decide whether Sharp's amended cross-complaint includes any claim on which relief can be granted. *Minch*, 486 F.3d at 302.

B

Sharp's theory of the case is inventive, if nothing else. It asserts broadly that MetLife had a fiduciary duty to it, and in particular a duty "not to mislead plan participants or misrepresent the terms or administration of the Plan." In Sharp's view, MetLife was obliged under the Plan to "inform Sharp and Rudzinski of each and every basis for its denial of Rudzinski's claim during the claims process, . . . to render its decisions of claims brought under the Plan in a manner consistent with the terms and requirements of the Plan and Policy, and . . . to advise Sharp if any required premiums were owed." Sharp reasons that when MetLife told Rudzinski that she was not entitled to benefits because Sharp had ceased paying premiums, this amounted to a breach of fiduciary duty to *Sharp*. MetLife's careless statement, Sharp asserts, caused it to suffer damage, because it "has been forced to expend sums of money on attorneys' fees and related costs

in defending itself against Rudzinski's lawsuit and in bringing this cross-claim, and has been required to expend extensive amounts of employee time and resources into the investigation and defense of Rudzinski's claims." Sharp wants a court order finding that MetLife breached its fiduciary duty to Sharp and an order "requiring MetLife to reimburse to the Plan its losses resulting from MetLife's breach of fiduciary duty." It argues that it is entitled to this relief under ERISA, 29 U.S.C. §§ 1132(a)(2), 1132(a)(3), and 1109(a).

The district court rejected this theory lock, stock, and barrel. The court ruled that ERISA does not impose the fiduciary duties that Sharp alleged, nor does it authorize the kind of relief Sharp sought. As the court noted, Sharp "didn't sue to recover anything on behalf of the Plan; rather, it is suing to recover attorney's fees and costs that it paid ([and] there is no allegation that the Plan paid these fees and costs; nor is there any allegation that the Plan lost anything as a result of the alleged breach)." The court ultimately concluded that 29 U.S.C. § 1109(a) imposes liability for Plan losses only, and therefore Sharp's claim "simply does not fit within the parameters of that statute." We agree with the district court's assessment. This analysis applies with equal force to two additional theories that Sharp advanced: that it is entitled under 29 U.S.C. § 1132(a) to bring a civil action for relief under 29 U.S.C. § 1109(a); and that it has a direct right to recover under 29 U.S.C. § 1132(a)(3). Sharp complains on appeal that the district court erred by failing to address its claim for breach of fiduciary duties under 29 U.S.C. § 1132(a)(3). There was no need for the district

court to do so, however, given the fundamental con-
clusion that there was no fiduciary duty to begin with.

Sharp urges this court to find that ERISA does not limit
breach of fiduciary duty claims to persons who are fiducia-
ries with respect to a plan. It bases its argument on the
language of § 1109(a). Section 1109(a) reads:

> Any person who is a fiduciary with respect to a
> plan who breaches any of the responsibilities, obliga-
> tions, or duties imposed upon fiduciaries by this
> subchapter shall be personally liable to make good to
> such plan any losses to the plan resulting from each
> such breach, and to restore to such plan any profits of
> such fiduciary which have been made through use
> of assets of the plan by the fiduciary, *and shall be
> subject to other equitable or remedial relief as the court may
> deem appropriate*, including removal of such fiduciary.

29 U.S.C. § 1109(a) (emphasis added).

Sharp contends that the emphasized text is a "second
clause" that "sets forth no requirement that the fiduciary's
breach of fiduciary duty claim must be based on plan
losses." Unfortunately for Sharp, however, the Supreme
Court expressly rejected this reading in its 1985 decision
in *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134,
141-42 (1985). There the Court held that "[t]o read
directly from the opening clause of [§ 1109(a)], which
identifies the proscribed acts, to the 'catchall' remedy
phrase at the end—skipping over the intervening language
establishing remedies benefitting, in the first instance,
solely the plan—would divorce the phrase being construed
from its context and construct an entirely new *class* of

relief available to entities other than the plan." *Id.* The Court concluded that "[a] fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual." *Id.* at 142.

We can assume that MetLife was a fiduciary with respect to the Plan, and we can also assume that Sharp was a fiduciary with respect to the Plan. But this does not mean that either one was a fiduciary with respect to the other. Their relationship was purely contractual: MetLife agreed to perform certain services for Sharp, with respect to this benefits plan. See 29 U.S.C. § 1002(21)(A) (defining circumstances in which "a person is a fiduciary with respect to a plan" without any mention of fiduciary relationships arising between parties who contract for plan-related services); *cf. Johnson v. Georgia-Pacific Corp.*, 19 F.3d 1184, 1188 (7th Cir. 1994) ("This definition [in § 1002(21)(A)] does not make a person who is a fiduciary for one purpose a fiduciary for every purpose. A person is a fiduciary to the extent that he performs one of the described duties; people may be fiduciaries when they do certain things but be entitled to act in their own interests when they do others."). Put a little differently, Sharp is not the kind of entity that Congress had in mind for the protections it created in ERISA. Sharp's argument based on a direct fiduciary duty therefore must be rejected.

Sharp next argues that even if it could assert a claim to relief only on behalf of the Plan, it met that standard (at

least as a matter of pleading). Sharp refers us to the *ad damnum* clause of its amended cross-complaint, in which it requests the court to "[e]nter an order requiring MetLife to reimburse the Plan its losses resulting from MetLife's breach of fiduciary duty." Sharp contends that, under the liberal pleading standard in the federal court, this request is sufficient to demonstrate that it was seeking relief on behalf of the Plan. We do not read the cross-complaint that way.

Under FED. R. CIV. P. 8(a)(2), a complaint (or cross-complaint) must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." While Rule 8(a)(2) does not require detailed factual allegations, the Supreme Court now requires it to include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (discussing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive MetLife's motion to dismiss, Sharp had to include allegations that supported (1) its right of action under ERISA (that is, that Sharp was acting either as a plan fiduciary, beneficiary, or participant); (2) MetLife's status as a plan fiduciary; (3) MetLife's breach of its fiduciary duties; and (4) a cognizable loss to the plan flowing from that breach. See *Pegram v. Herdrich*, 530 U.S. 211, 223-26 (2000); *Jenkins v. Yager*, 444 F.3d 916, 924 (7th Cir. 2006). Sharp's complaint falls short. Its amended cross-complaint offers only the conclusory statements that MetLife is a fiduciary, that Sharp is a plan fiduciary, that MetLife breached its fiduciary duties to Sharp, that Sharp has suffered damage from that breach, and that MetLife must reimburse the Plan for its losses. At no point

does Sharp explain how the alleged breach of fiduciary duty imposed (or could have imposed) a loss on the Plan. See *Wsol v. Fiduciary Mgmt. Assocs., Inc.*, 266 F.3d 654, 656 (7th Cir. 2001). Nothing Sharp has said tells the reader how the expenditures it made in the Rudzinski case— enhanced as they might have been because of MetLife's comment—relate to any duty under ERISA.

Finally, Sharp contends that even if its cross-complaint lacked critical details, the district court erred by not permitting it to replead. We see no reversible error in that respect. It is unclear from the record whether Sharp ever moved the district court for leave to amend its amended cross-complaint. See FED. R. CIV. P. 15(a). If not, then Sharp has forfeited the point. And even if it did preserve it, in our view any amendment would have been futile.

Sharp cannot avoid the fact that any recovery it may hope to achieve must be related to the fiduciary duties that it alleges MetLife owes to it, that MetLife must have been performing a fiduciary function when it made the comment during the settlement discussions, and that it must be seeking to recover losses to the Plan. See *Coyne & Delany Co. v. Blue Cross & Blue Shield of Virginia*, 102 F.3d 712, 714-15 (4th Cir. 1996). Sharp's claim does not meet this requirement. Sharp claims that the "damage" caused by MetLife's comment can be measured by the monies Sharp expended on "attorneys' fees and related costs in defending itself against Rudzinski's lawsuit and in bring-ing [the] cross-claim," as well as the "extensive amounts of employee time and resources" poured into the investi-

gation and defense of Rudzinski's claims. But these are plainly damages and expenses to Sharp, as a company, not to the Plan. They are therefore not appropriate items of damage under either § 1109(a) or § 1132(a)(3). The only reasonable understanding of Sharp's cross-complaint is that it is seeking a monetary award for itself, individually, as reimbursement for the cost of its legal expenses. ERISA does not provide remedies other than those expressly set forth by Congress, and §§ 1109(a) and 1132(a)(3) provide relief only for damage to the Plan. In the final analysis, what really frustrates Sharp is that under the American Rule it must bear its own legal costs, including those attributable to Rudzinski's decision to add it as a defendant to her lawsuit. Nothing in ERISA upsets that general rule, as it applies to Sharp.

C

Sharp also asserts that the district court erred when it dismissed its claim for indemnification. Its cross-complaint does not identify whether this alleged right to indemnification is based on ERISA or state law (though its brief suggests that the indemnification claim is federal). We find no such indemnification right on Sharp's behalf in ERISA. Like claims under §§ 1109(a) and 1132(a)(3), indemnification claims under ERISA may go forward only if the plan has suffered a loss. 29 U.S.C. § 1105(a); *Alton Memorial Hosp. v. Metropolitan Life Ins. Co.*, 656 F.2d 245, 249-50 (7th Cir. 1981). As with Sharp's fiduciary breach claims, Sharp has entirely failed to plead any loss to the Plan resulting from MetLife's clumsy effort to

blame Sharp for its benefits decision. As with the fiduciary breach claims, this is fatal to the indemnification claim.

D

Finally, Sharp argues that the district court erred when it held that its state-law claims are preempted by ERISA. As the Supreme Court observed in *Aetna Health, Inc. v. Davila*:

> Congress enacted ERISA to "protect . . . the interests of participants in employee benefit plans and their beneficiaries" by setting out substantive regulatory requirements for employee benefit plans and to "provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive pre-emption provisions, see ERISA § 514, 29 U.S.C. § 1144, which are intended to ensure that employee benefit plan regulation would be "exclusively a federal concern." *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981).

542 U.S. 200, 208 (2004). Section 1144 expresses that policy by saying that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Congress chose this aggressive form of preemption in order to "knock out any effort to use state law, including state common law, to obtain benefits under such a plan." *Pohl v.*

*National Benefits Consultants, Inc.*, 956 F.2d 126, 127 (7th Cir. 1992). The idea is to "protect the financial integrity of pension and welfare plans by confining benefits to the terms of the plan as written . . . ." *Id.* at 128. Nonetheless, while ERISA's preemption provision is broad, it does not sweep all state law off the table. See *Pegram v. Herdrich,* 530 U.S. 211, 236-37 (2000) (holding that challenges to mixed eligibility and treatment decisions made by an HMO are not preempted by ERISA). If the connection between a state law claim and the benefit plan is too tenuous, remote, or peripheral, ERISA's preemption provision may not apply. *Id.*; *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1494-95 (7th Cir. 1996).

The district court thought that Sharp's state-law claims could not be resolved "without referring back to the Plan to determine Sharp's and MetLife's respective obligations." We do not understand Sharp's claims in that way. As we have said throughout this opinion, Sharp's claims arise under the contract it had with MetLife; the ERISA Plan was the subject of that contract, but nothing in the contract depended on the particular content of the Plan. We conclude that the transaction costs Sharp incurred are not sufficiently related to ERISA to bring them within the scope of ERISA's preemptive field.

This conclusion does not mean, however, that Sharp is necessarily entitled to continue to litigate in federal court. Anticipating the possibility of our ruling on the merits, the district court alternatively held that even if Sharp could amend its state-law counts in such a way as to avoid preemption, the court would decline to exercise

supplemental jurisdiction over those claims and dismiss them pursuant to 28 U.S.C. § 1367(c)(3), in light of its dismissal of all claims over which it had original jurisdiction. A district court's decision to decline to exercise supplemental jurisdiction over a state-law claim for this reason is reviewed for an abuse of discretion. *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 129 S. Ct. 1862, 1866-67 (2009); *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 906 (7th Cir. 2007).

Normally, when "all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994). There are three acknowledged exceptions to this rule: when (1) "the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court"; (2) "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort"; or (3) "when it is absolutely clear how the pendent claims can be decided." *Id.* (internal quotation marks omitted).

We see no abuse of the district court's discretion here. While it is likely that the statute of limitations has technically run on some, if not all, of Sharp's state-law claims, there is an Illinois statute that authorizes tolling in these circumstances. 735 ILCS 5/13-217. If it applies, then Sharp's claims would not be time-barred if it pursues them in state court. In addition, the district court disposed of the federal claims on a motion to dismiss, and so it is

difficult to see how "substantial judicial resources" have been committed to this case. See *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008). Finally, we are not prepared to say that the proper resolution of the state-law claims is absolutely clear. We conclude, therefore, that the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over Sharp's state law claims.

* * *

We AFFIRM the judgment of the district court in favor of MetLife on Sharp's ERISA claims and VACATE the district court's decision on the merits of the state-law claims. Sharp's state-law claims instead are DISMISSED without prejudice pursuant to 28 U.S.C. § 1367(c) in accordance with the district court's alternative ruling. Costs on appeal are to be taxed against Sharp.