In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-1936

JANE DOE-2, et al.,

*Plaintiffs-Appellants*,

*v.*

MCLEAN COUNTY UNIT DISTRICT NO. 5
BOARD OF DIRECTORS, et al.,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Central District of Illinois.
No. 08 C 2169—**Michael P. McCuskey**, *Chief Judge*.

ARGUED SEPTEMBER 21, 2009—DECIDED JANUARY 22, 2010

Before CUDAHY, WOOD, and TINDER, *Circuit Judges*.

TINDER, *Circuit Judge.* From 2002 to 2007, Jon White was an elementary schoolteacher in two central Illinois school districts, first the McLean County School District and then the Urbana School District. During that time, he sexually abused several female students in both districts. In this appeal, we address the liability of the McLean County School District for allowing White's

abuse to occur. The case is more complicated, though, because it does not involve the McLean County School District's failure to protect its own students from White; instead, we consider whether the District may be liable for White's abuse of an Urbana student after he left McLean County.

Jane Doe-2 ("Doe-2"), one of the Urbana students victimized by White, sued the McLean County School District and various McLean County school officials under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), and Illinois tort law. Doe-2 alleged that these defendants knew that White sexually harassed McLean County students but, rather than sound the alarm, allowed White to quietly resign and obtain a new job in Urbana. Doe-2 claimed that this inaction amounted to a "deliberate indifference" to White's harassment actionable under Title IX, as well as willful and wanton misconduct actionable under Illinois tort law. The district court dismissed Doe-2's complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. We conclude that, at the time White abused Doe-2, the defendants lacked the requisite control over White to establish deliberate indifference liability under Title IX; they also owed no duty to Doe-2 enforceable under Illinois tort law. For these reasons, we affirm.

## I. Background

Doe-2's complaint describes the facts leading to White's harassment of her in Urbana, facts that we accept as true in this appeal from the dismissal of Doe-2's

complaint for failure to state a claim. *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 510 (7th Cir. 2009). From 2002 to 2005, White was an elementary schoolteacher in McLean County, Ill. During that time, he sexually harassed his female students through methods that included hugging students and holding them on his leg, having students massage him and wrap their legs around him, showing students sexually suggestive photographs, and commenting on students' sexual attractiveness. Easily the most disturbing form of abuse was what Doe-2's complaint describes as a "taste test game," in which White would blindfold students and then place foods in their mouths using a banana, his hand, or his penis.

Doe-2 identifies several McLean County school officials who were aware, at least at some level, of White's harassment: Jim Braksick and Edward Heinemann, principals of the elementary school where White worked; Dale Heidbreder, assistant principal; Alan Chapman, superintendent of the McLean County School District; and John Pye, the assistant superintendent. These defendants allegedly knew of several complaints from students and parents relating to inappropriate touching between White and his female students, including White's having students massage him and wrap their legs around him. Another complaint related to White's showing a sexually suggestive photograph to a student and commenting on her appearance.

The McLean County School District decided to get rid of White but didn't fire him outright. Instead, the

District took a series of actions that Doe-2 characterizes as "passing" White to Urbana. In April 2005, the District and White entered into a severance agreement that, according to Doe-2's complaint, "intentionally concealed" White's sexual harassment of his students. Heinemann, Chapman, and Pye also provided a "falsely positive letter of recommendation" for White, which again made no mention of White's sexual harassment.

In August 2005, the Urbana School District hired White to teach second grade at one of its elementary schools. At around that time, the District sent a Verification of Teaching Experience form to the McLean County School District. Assistant Superintendent Pye completed the form and reported that White taught in his district for three complete school years, 2002 to 2005. The Urbana School District received the form from Pye on August 29.

While teaching in Urbana from 2005 to 2007, White sexually harassed several of his female students, including Doe-2, using methods similar to those he used in McLean County. Following his arrest by Urbana police in February 2007, White pleaded guilty to aggravated criminal sexual abuse of two of his McLean County students and eight of his Urbana students, including Doe-2.

Doe-2, through her mother, Julie Doe-2, sued the McLean County School District and the five individual school officials named above for failing to disclose White's sexual harassment before he could assault Doe-2. Doe-2 also sued the Urbana School District and several Urbana school officials, but these Urbana defendants have settled

with Doe-2 and are no longer parties in this case. Doe-2 asserted a Tile IX claim against the McLean County School District, alleging that the District's concealment of White's sexual harassment amounted to a deliberate indifference to the safety of the students in Urbana. Doe-2 also raised supplemental Illinois tort law claims against all of the McLean County defendants. She claimed that the defendants violated their obligations under the Illinois Abused and Neglected Child Reporting Abuse Act ("ANCRA"), 325 ILCS 5/4, by failing to report White's sexual harassment to state authorities, and that this ANCRA violation caused Doe-2 to suffer White's abuse. Doe-2 also claimed that the defendants acted with willful and wanton disregard for her safety by concealing White's sexual harassment and thereby allowing him to obtain a job in Urbana.

The district court dismissed all of Doe-2's claims under Fed. R. Civ. P. 12(b)(6). The court reasoned that the McLean County School District could not be liable under Title IX for White's sexual harassment of Doe-2 in Urbana, since that harassment occurred outside of the District's control. As for Doe-2's tort claims, the court concluded that Doe-2, an Urbana student, failed to identify any duty that the McLean County defendants owed to her under Illinois tort law.

## II. Analysis

Doe-2 appeals the dismissal of both her Title IX claim and her state-law willful and wanton misconduct claims. We review de novo the district court's dismissal of a

complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, accepting as true all of the complaint's well-pleaded factual allegations. *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 510 (7th Cir. 2009). To survive a motion to dismiss, the complaint's factual allegations need not be detailed but must be sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**A. Title IX**

Title IX of the Education Amendments of 1972 provides that, with exceptions not relevant here, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a). In enacting Title IX, Congress sought to prevent federally funded educational institutions from discriminating on the basis of sex. *See Cannon v. Univ. of Chi.*, 441 U.S. 677, 704 (1979). Although the only remedy expressly authorized by the statute is the termination of the recipient's federal funding, 20 U.S.C. § 1682, the Supreme Court has held that Title IX contains an implied private right of action for money damages, *Cannon*, 441 U.S. at 717; *Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 76 (1992).

Title IX's implied right of action allows a student who suffers sexual harassment by a teacher to recover

damages against her school district, but only if the school district acts with "deliberate indifference" to the harassment. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). To display deliberate indifference, the school district must first have "actual knowledge" of the sexual harassment. *Id.* In addition to actual knowledge, the school district must have "substantial control over both the harasser and the context in which the known harassment occurs." *Davis ex rel. LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 645 (1999). This substantial control element is essential for Title IX liability because a school district cannot be liable for its indifference to harassment that it lacks the authority to prevent. *Id.* at 644.

Here, these McLean County defendants lacked the requisite control over White's harassment of Doe-2 in Urbana. White harassed Doe-2 after he ended his employment with the McLean County School District, and this harassment occurred in an Urbana elementary school where the defendants had no supervisory authority. Since the defendants "lack[ed] the authority to take remedial action" in Urbana, White's harassment did not "take place in a context subject to [their] control." *Id.* at 644-45.

The Eighth Circuit dealt with a similar Title IX claim arising out of a school district's agreement to let a teacher-harasser quietly resign, after which the teacher moved on to a new school district and continued his sexual abuse. *See Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 775-77 (8th Cir. 2001). The court concluded that the defendant school

district lacked the necessary control over the teacher's abuse in the new district to incur Title IX liability. *Id.* at 782. The school district's alleged concealment of prior student complaints of sexual abuse was "insufficient to create a direct link between the abuse and [the district's] scope of control." *Id.*

As in *Shrum*, the McLean County defendants no longer controlled White by the time he harassed Doe-2 in Urbana. Recognizing this fact, Doe-2 pegs her theory of deliberate indifference to the latest point when the defendants did control White, the April 2005 severance agreement. Even though the defendants couldn't control White's actions in Urbana, they could control their own decision to conceal White's suspected abuse while letting him quietly resign. According to Doe-2, this decision displays a deliberate indifference to the risk that White would move on to another school district like Urbana and continue his sexual harassment.

But even assuming that the defendants had actual knowledge of a risk that White would sexually abuse Urbana students, they still lacked the requisite control over such harassment to incur Title IX liability. White harassed Doe-2 in Urbana several months after he left the McLean County School District, meaning that these McLean County defendants lacked "authority to take remedial action." *Davis*, 526 U.S. at 644; *cf. Delgado v. Stegall*, 367 F.3d 668, 672 (7th Cir. 2004) (opining that a university could be deliberately indifferent for failing to protect its current students from the risk of a known harasser). Since the McLean County School District

didn't control the Urbana "context" of White's harassment of Doe-2, Doe-2 cannot recover from the District under Title IX's implied right of action. *Davis*, 526 U.S. at 645.

Perhaps expanding Title IX's implied right of action to include a school district's failure to expose a teacher-harasser no longer within its control would have a positive effect, discouraging school officials from quietly shuffling abusive teachers on to another district. Nonetheless, given the Supreme Court's reluctance to expand statutory remedies through implied rights of action, *see Smart v. Int'l Bhd. of Elec. Workers, Local 702*, 315 F.3d 721, 727 (7th Cir. 2002), we are constrained to follow the specific limitations that the Court has placed on Title IX's implied private remedy. One such limitation is that the known acts of sexual harassment be subject to the school district's control, *Davis*, 526 U.S. at 644, a control that the McLean County School District didn't have over White's harassment of Doe-2 in Urbana.

## B.  Willful and Wanton Misconduct Under Illinois Law

Moving to Doe-2's Illinois tort claims, we begin with a comment on subject matter jurisdiction. The district court had supplemental jurisdiction over Doe-2's state-law claims under 28 U.S.C. § 1367(a), since these claims were part of the same "case or controversy" as Doe-2's Title IX claim over which the court had original jurisdiction. Ordinarily, when a district court dismisses the federal claim conferring original jurisdiction before trial, it relin-

quishes supplemental jurisdiction over any state-law claims under 28 U.S.C. § 1367(c)(3). *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008). Here, following the dismissal of Doe-2's Title IX claim under Rule 12(b)(6), nothing indicates that the district court or the parties thought of dismissing Doe-2's state-law claims without prejudice for the Illinois courts to resolve. Given the relatively novel issues of Illinois tort law presented by Doe-2's case, it would have been appropriate to consider such a dismissal. *See id.* at 608 (observing that the supplemental claims did not "entangle the federal courts in difficult issues of state law").

Still, the failure below to consider the possibility of dismissing Doe-2's supplemental claims does not preclude our review. Although a district court may relinquish supplemental jurisdiction following the dismissal of all federal claims, it is not required to do so, unless the federal claims are frivolous and so do not engage the jurisdiction of the federal courts. *CropLife Am., Inc. v. City of Madison*, 432 F.3d 732, 734 (7th Cir. 2005). We have concluded that Doe-2's federal claim under Title IX was properly dismissed, but this claim was not so weak as to be frivolous. Further, the factual basis for Doe-2's state-law claims was indistinguishable from the asserted basis for her federal claim, and the district judge had devoted substantial court time and resources to analyzing the complaint's factual allegations before addressing the state-law theories. And finally, Doe-2 chose to bring all of her claims in federal court and never requested the alternative disposition of a § 1367(c)(3) dismissal of her state-law claims should her Title IX claim fail. *See*

*Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC,* No. 09-2523, 2009 WL 4894242, at *1 (7th Cir. Dec. 21, 2009) (resolving supplemental claims on appeal where no party argued for relinquishment); *CropLife,* 432 F.3d at 734 (same). Accordingly, we will take up the merits of Doe-2's Illinois tort claims.

Under Illinois law, a plaintiff pleading willful and wanton misconduct must establish the same basic elements of a negligence claim, which are the existence of a duty, breach of that duty, and an injury proximately resulting from the breach. *Krywin v. Chi. Transit Auth.*, 909 N.E.2d 887, 890 (Ill. App. Ct. 2009). A willful and wanton claim has the additional requirement that the breach be not merely negligent, but with "conscious disregard for the welfare of the plaintiff." *Ortega-Piron ex rel. Doe v. Chi. Bd. of Educ.*, 820 N.E.2d 418, 423 (Ill. 2004).

In trying to identify a duty that the defendants owed to her, Doe-2 runs into the familiar rule that a person ordinarily "has no duty to act affirmatively to protect another from criminal attack by a third person." *Iseberg v. Gross*, 879 N.E.2d 278, 284 (Ill. 2007) (citing Restatement (Second) of Torts § 314 (1965)). The direct source of Doe-2's injury was a criminal sexual assault by Jon White, a third party whom these McLean County defendants didn't control at the time of the assault. So even if the defendants knew that White was a sexual harasser who likely would assault Doe-2 or other Urbana students, these facts alone would not create a duty under Illinois common law to protect Doe-2.

That is so even though Illinois statutory law would require the defendants to act. Under the Illinois Abused

and Neglected Child Reporting Abuse Act, "school person-
nel" who have "reasonable cause to believe" that a student
has suffered abuse must notify the Illinois Department
of Children and Family Services. 325 ILCS 5/4. But
ANCRA's mandate to report child abuse does not create
any duty to the abused child enforceable under Illinois
tort law. In *Cuyler v. United States*, 362 F.3d 949, 952-53
(7th Cir. 2004), we explained that an ANCRA violation
does not give rise to a private tort action unless the viola-
tion also breaches a common law duty of care owed to
the plaintiff. The Illinois Appellate Court similarly con-
cluded in *Tanya S. ex rel. Doe 1 v. N. Cent. Behavioral
Health Sys., Inc.*, 816 N.E.2d 4, 7-8 (Ill. App. Ct. 2004), that
ANCRA did not provide a private cause of action for a
psychology clinic's failure to report sexual abuse by one
of its patients. The court found "no evidence that the
statute was designed to . . . impose civil liability on those
who fail to report." *Id.* at 8. From this authority it
follows that Doe-2 cannot rely on the defendants' alleged
violation of ANCRA's reporting requirements to
support her private tort claims; she must identify a com-
mon law duty owed to her by the defendants.

One common law duty to protect against third-party
attacks arises where the defendant has a "special relation-
ship" with the plaintiff. *Iseberg*, 879 N.E.2d at 284. Illinois
courts have recognized that some relationships between
public school districts and their students create a duty
to protect, but only under certain circumstances. A
school district does not have a duty to protect its student
body at large against the general risk of criminal attack,
even if the attacker is another student subject to the dis-

trict's authority. *See Lawson v. City of Chi.*, 662 N.E.2d 1377, 1389 (Ill. App. Ct. 1996) (dismissing a negligence claim arising out of a school board's failure to prevent one student from shooting another, where the board lacked knowledge that the shooter had a gun or that the victim was in particular danger); *Thames v. Bd. of Educ.*, 645 N.E.2d 445, 449-50 (Ill. App. Ct. 1994) (same). On the other hand, a school district with unique knowledge that one of its teachers or students poses a particular threat to another student may acquire a duty to protect. *See Ortega-Piron*, 820 N.E.2d at 423-24 (recognizing a willful and wanton claim for the school board's failure to prevent a known sexually aggressive student from assaulting a known mentally disabled student); *Green v. Carlinville Cmty. Unit Sch. Dist. No. 1*, 887 N.E.2d 451, 456 (Ill. App. Ct. 2008) (holding that a school district owed the highest degree of care to a student on a school bus, such that the district could be liable for the sexual abuse of the student by the school bus driver)*; Doe v. Dimovski*, 783 N.E.2d 193, 200 (Ill. App. Ct. 2003) (finding allegations that the school board knew of a teacher's sexual misconduct with one female student sufficient to show a conscious disregard for the safety of other female students).

Here, Doe-2 has not alleged a special relationship that would trigger a duty to protect on the part of the McLean County defendants. Doe-2 was an Urbana student not subject to these defendants' control, and Doe-2 makes no allegation that the defendants had any contact with her before this lawsuit. Doe-2 does not cite, and we are not aware of, any Illinois case imposing a duty to protect under these circumstances, where both the

student-victim and the place of injury are outside of the defendant school's authority. *Cf. Dimovski*, 783 N.E.2d at 200 (recognizing the school board's potential liability to several of its female students with whom the abusive teacher had daily contact); *Pesek v. Discepolo*, 475 N.E.2d 3, 5 (Ill. App. Ct. 1985) (dismissing a claim against a school for failing to prevent one of its students from sexually assaulting a member of the public off school grounds).

The defendants did complete Urbana's Verification of Teaching Experience form on behalf of White at around the time that the Urbana School District hired him, so we may assume that they suspected that White would come into contact with Urbana students. Still, foreseeability of a risk that White would harass Urbana students is not enough to create a duty to protect, absent a special relationship. *See Iseberg*, 879 N.E.2d at 288-89 (declining to abandon the special relationship doctrine in favor of an affirmative duty to prevent reasonably foreseeable injuries).

Although the defendants had no duty to protect Doe-2 from White's third-party attack, another possible tort theory is that it was the defendants' own actions that injured Doe-2. Illinois common law imposes a duty of "reasonable care to avoid injuring other people." *Cuyler*, 362 F.3d at 953. While persons generally have no duty to protect against dangers created by third parties, they do have a duty to protect against harms created by their own conduct. *See id.*; Restatement (Second) of Torts § 314 cmt. d (1965) (The rule that an actor ordinarily has no

duty to protect others "applies only where the peril in which the actor knows that the other is placed is not due to any active force which is under the actor's control."); *cf. Thames*, 645 N.E.2d at 451 (observing that the student had not alleged that school officials "created the position of peril that was ultimately injurious").

It is not entirely implausible to characterize the defendants' actions, rather than White's, as the source of Doe-2's injury. Doe-2 argues that the defendants took deliberate steps to secure a new position for White in the Urbana School District, all while concealing White's known history of sexual harassment. By directing White toward Urbana students in this manner, the defendants created the risk that White would harass Doe-2 and, in so doing, assumed a duty to protect her.

Ultimately, however, we conclude that Doe-2's allegations do not support the theory that the defendants created the risk that White would injure her. Although Doe-2 claims that the defendants carefully orchestrated White's transfer to Urbana, none of the alleged facts indicates that the defendants encouraged the Urbana School District to hire White or otherwise promoted his employment there. On the contrary, Doe-2's own complaint charges that the Urbana School District never bothered to perform the ministerial act of checking White's employment record from the McLean County School District before hiring him.

As noted, the defendants did complete Urbana's Verification of Teaching Experience form and a letter of recommendation on behalf of White, neither of which men-

tioned White's sexual harassment. Doe-2 makes much of the verification form, and in particular, the defendants' alleged misrepresentation on the form that White taught for a full "180 days" during the 2004-05 school year, even though the defendants entered into the severance agreement with White in April 2005, before the end of the school year.

Yet even if the defendants did misrepresent White's employment record in their correspondence to the Urbana School District, Doe-2 fails to explain how this misrepresentation would breach any duty owed to her. A referring employer may be liable for failing to disclose a former employee's misconduct, if the employer has a special or fiduciary relationship with the plaintiff that raises a duty to speak. *Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor*, 692 N.E.2d 812, 817-18 (Ill. App. Ct. 1998). As we have discussed, Doe-2 has not alleged a special relationship—indeed, "no prior relationship of any kind," *id.* at 817—with the defendants that would trigger a duty to speak. Perhaps McLean County's purported misrepresentation of White's employment record would be material to a misrepresentation claim brought by the Urbana School District. (We express no opinion on the merits of such a claim.) As for Doe-2, the defendants never said anything to her about White, so we cannot see how any misrepresentations in the recommendation letter or verification form sent to Urbana would advance Doe-2's tort claims. *See Sassak v. City of Park Ridge*, 431 F. Supp. 2d 810, 819 (N.D. Ill. 2006) (rejecting abused arrestees' misrepresentation claim against a former employer who concealed the abusing

officer's misconduct on the ground that the arrestees never learned of the misrepresentation).

In sum, although Doe-2 would have us infer that the defendants actively facilitated the placement of White in her Urbana classroom, the alleged facts do not support that conclusion. The essence of Doe-2's complaint is that the defendants should have told Urbana school officials and other authorities about White's suspected harassment. Their failure to do so did not breach any duty owed to Doe-2.

No doubt the defendants' alleged non-disclosure of White's sexual harassment is troubling, and we hope that school officials would be more proactive in protecting students, even those outside of their own districts, from abusive teachers. In that regard, we emphasize that nothing in our decision today should suggest that school districts can quietly shuffle abusive teachers on to the next district with impunity. ANCRA imposes criminal penalties for willful violations of its reporting requirements, 325 ILCS 5/4-5/4.02, which we trust will give Illinois school officials an extra incentive (if they needed one) to disclose their teachers' known acts of sexual harassment.

Our decision also does not leave student victims like Doe-2 without a remedy for their school districts' failure to respond to harassment by teachers. As mentioned above, Doe-2 has already settled with the Urbana defendants who employed White at the time of Doe-2's injury. We also note, but reserve comment on, another case pending against these McLean County defendants

brought by McLean County students abused by White. *Doe ex rel. Doe v. White,* 627 F. Supp. 2d 905 (C.D. Ill. 2009).

### III. Conclusion

The McLean County School District lacked the control over Doe-2's injury that could give rise to Title IX liability, and the defendants breached no duty to Doe-2 enforceable under Illinois tort law. We AFFIRM the district court's dismissal of Doe-2's complaint for failure to state a claim.