NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 19, 2011[*]
Decided May 20, 2011

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 10-3373

| | |
|---|---|
| MICHAEL J. ZUEGE, JR., *Plaintiff-Appellant,* | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 09-cv-451-wmc |
| DANIEL KNOCH, et. al., *Defendants-Appellees.* | William M. Conley, *Chief Judge.* |

**O R D E R**

Michael Zuege, a former Wisconsin inmate, appeals from the district court's grant of summary judgment on his claim under 42 U.S.C. § 1983 that prison officials were deliberately indifferent to his medical needs when they failed to properly diagnose and treat his vision problems. Because he cannot show that the defendants acted with the required mental state, we affirm.

---

[*]After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

In 2007 an ophthalmologist who examined Zuege at the Oakhill Correctional Institution suspected that he might have Keratoconus or Fuchs' dystrophy. Keratoconus is a deterioration in the shape of the cornea that causes blurred vision. *See* Mayo Clinic, Keratoconus, www.mayoclinic.com/health/keratoconus/DS01116 (last visited April 4, 2011). Fuchs' dystrophy causes the cells that line the cornea to die off, leading to fluid build-up and blurred vision. *See* Mayo Clinic, Fuchs' dystrophy, www.mayoclinic.com/health/ fuchs-dystrophy/DS01147 (last visited April 4, 2011). The ophthalmologist referred Zuege to Dr. Daniel Knoch, an ophthalmologist at the University of Wisconsin School of Medicine and Public Health.

Dr. Knoch determined that Zuege had uncorrected vision of 20/150 in his right eye and 20/400 in his left eye and diagnosed him with Keratoconus. Dr. Knoch referred Zuege to Robert Lazorik, coordinator of the university's contact lens clinic, for a fitting for rigid contact lenses—the primary treatment for Keratoconus. That same day Lazorik fitted Zuege with rigid contact lenses that improved his vision to 20/40 in each eye. Lazorik examined Zuege one month later to check the fit of the lenses and to ensure that there was no corneal strain.

Zuege returned to Dr. Knoch two months later and confirmed that he was seeing better, but complained that his contacts were uncomfortable and that his eyes were drying out. Dr. Knoch recommended that he use artificial tears four times a day. At an appointment three months later, Zuege complained that his eyes were still drying out and Dr. Knoch advised using artificial tears six times a day. During this appointment Zuege overheard a resident ask Dr. Knoch if Zuege had Fuchs' dystrophy, but Dr. Knoch explained to the resident that it was not Fuchs' dystrophy because there were no corneal clefts. Dr. Knoch also ordered an MRI and other tests, all of which came back with normal results. Dr. Knoch then referred Zuege to Lazorik to try a "piggyback" lens—a soft lens worn under the rigid contact lens—to improve the fit of the rigid lenses. The piggyback lenses, however, did not make the rigid lenses more comfortable.

Zuege complained that his vision was still deteriorating when he was transferred to Prairie du Chien Correctional Institute in the fall of 2008. Dr. Donna Higgins, an ophthalmologist, confirmed the diagnosis of Keratoconus and fitted Zuege with new hard contact lenses. Dr. Higgins noted that Zuege's corneas were "warped" and "mangled," possibly from wearing contact lenses that were too tight. Dr. Higgins also diagnosed Zuege with Fuchs' dystrophy and prescribed eye drops and ointment. Dr. Higgins noted that the only other treatment option was a cornea transplant but did not recommend this procedure because it involves high risks.

Zuege sued Dr. Knoch, Lazorik, and the University of Wisconsin Hospitals and Clinics Authority claiming that they violated the Eighth Amendment by failing to diagnose and treat his Fuchs' dystrophy. Zuege also claimed that their negligent treatment damaged his vision and caused him emotional harm, and sued for medical malpractice under state law.

The district court granted summary judgment on the deliberate-indifference claim, finding that Zuege did not show that Dr. Knoch and Lazorik failed to take reasonable measures to provide him with necessary treatment. The court pointed out that Dr. Knoch and Lazorik examined Zuege seven times over the course of nine months and responded—by trying piggyback lenses and a regiment of artificial tears—when Zuege complained that the lenses they prescribed were painful. The court concluded that even if Dr. Knoch and Lazorik failed to diagnose and treat Zuege for Fuchs' dystrophy, Zuege had not shown that they deliberately disregarded his eye condition. The district court also noted that it was undisputed that there is no treatment for Fuchs' dystrophy that would have delayed its onset or progression. The district court declined to exercise supplemental jurisdiction over Zuege's state-law malpractice claims.

On appeal Zuege argues that the district court erred when it granted summary judgment on his deliberate-indifference claim because the court should have found that failing to treat him for Fuchs' dystrophy violated the Eighth Amendment. Zuege relies on his referral to Dr. Knoch from the ophthalmologist at Oakhill Correctional Institution, which suggested Zuege may have Fuchs' dystrophy, and Dr. Knoch's conversation about Fuchs' dystrophy with a resident at one of Zuege's appointments to argue that Dr. Knoch was aware of a serious medical condition and disregarded it.

To show that Dr. Knoch and Lazorik were deliberately indifferent to a serious medical condition, Zuege must establish that they were aware of a medical need and disregarded it. *See Farmer v. Brennan,* 511 U.S. 825, 834, 837 (1994); *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). Even gross negligence is insufficient to establish a constitutional violation if the defendants are not subjectively aware of a risk of harm from their inadequate treatment. *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). Thus neither an incorrect diagnosis nor a disagreement about the proper course of treatment alone is sufficient to show deliberate indifference. *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010); *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010); *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *Johnson v. Doughty*, 433 F.3d 1001, 1012-13 (7th Cir 2006).

The record does not support Zuege's contention that Dr. Knoch and Lazorik disregarded a serious medical need. As the district court noted, Dr. Knoch and Lazorik repeatedly examined Zuege and responded to his complaints of eye pain by recommending

piggyback lenses and artificial tears. Dr. Knoch's discussion of Fuchs' dystrophy with a resident at one of Zuege's appointments shows that he considered Fuchs' dystrophy but did not think it was the proper diagnosis for Zuege's symptoms. The district court properly concluded that since Zuege had not shown that Dr. Knoch's diagnosis was "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment," there is no basis to infer deliberate indifference to Zuege's eye condition. *Norfleet*, 439 F.3d at 396.

Zuege also generally challenges the district court's refusal to exercise supplemental jurisdiction over his state-law malpractice claims. The district court dismissed these claims because they implicated unsettled issues of Wisconsin law that the court thought were better handled by state courts.

Having granted summary judgment on Zuege's federal claim, the district court did not abuse its discretion by dismissing the state-law claims. When all federal claims are dismissed before trial, a district court should relinquish jurisdiction over pendant state-law claims unless the statute of limitations has run, substantial judicial resources have already been committed to resolving the pendant claims, or it is absolutely clear how the claims will be decided. *See* 28 U.S.C. § 1367(c)(3); *Sharp Elec. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514-15 (7th Cir. 2009).

Accordingly, we AFFIRM the judgment of the district court.