FIFTH DIVISION
SEPTEMBER 7, 2007

1-06-0753

| | | |
|---|---|---|
| SHARON WEISS and MITCHELL WEISS, ) | Appeal from the | |
| Individually and on Behalf of All Others ) | Circuit Court | |
| Similarly Situated, ) | of Cook County. | |
| Plaintiffs-Appellants, ) | | |
| ) | | |
| v. ) | No. 04 CH 19635 | |
| ) | | |
| MI HOME PRODUCTS, INC., ) | The Honorable | |
| ) | Mary Anne Mason | |
| Defendant-Appellee. ) | Judge Presiding. | |

JUSTICE TULLY delivered the opinion of the court:

This appeal arises from the dismissal of plaintiffs' complaint. The plaintiffs, Sharon and Mitchell Weiss, filed a complaint against the defendant, MI Home Products, under various theories of breach of warranty and for a declaratory judgment. The plaintiffs are the original owners of their townhome and they allege that numerous windows manufactured by the defendant and installed in their home failed and fogged. The plaintiffs allege that some of the windows were replaced by the defendant under a warranty but that defendant failed to pay the costs for shipping and installation of the replacement windows. Plaintiffs further allege that the defendant refuses to replace other failed window units in the residence, claiming the warranty on those units has expired.

Plaintiffs have attached two warranties to their pleadings. The first is a copy of the

warranty the plaintiffs received from another townhome owner and indicates "Rev 1/98". The other is a warranty produced by the defendant during the course of this litigation and represented to be the warranty applicable to the windows at issue.

The first warranty obtained by plaintiffs from another homeowner states as follows with regard to insulated windows:

"LIMITED MANUFACTURERS' WARRANTY

INSULATED GLASS UNIT. 10 years from date of installation, the insulating glass units will be free of obstruction of vision as a result of dust or film formation on the internal surfaces caused by failure of the hermetic seal due to faulty manufacture under conditions of normal use and service. THE MANUFACTURER will assume 100% of the cost of the replacement glass within the first ten years. *** Replacement material may be picked up at THE MANUFACTURER'S factory, or at any designated distribution point. *** This warranty covers material only and THE MANUFACTURER does not assume any expense involved with the removal or reinstallation of any replacement parts."

The second warranty produced by the defendant states that the "Limited Lifetime Warranty" does not extend to insulated glass and specifically states that insulated glass is covered under separate warranty. The section which applies to insulated glass states as follows:

"INSULATED GLASS (Limited 10 Year Warranty)

Capitol Windows and Doors, a Division of Metal Industries, Inc. of California warrants that for a period of ten (10) years from the date of manufacture (as marked on the insulated glass separator channels to which this limited warranty applies) that the lite (s)

2

will be free from material obstruction of vision as a result of dust or film formation on the internal glass surfaces caused by failure of the hermetic seal due to faulty manufacture of the lite (s) by the manufacturer.

***

In the event that the insulated glass lite(s) fail to conform to the Manufacturer's limited warranty previously described, the Manufacturer will, at its option, furnish the Purchaser with another insulated glass lite(s), FOB nearest the Manufacturer's shipping point, or refund the purchase price of the insulated glass lite(s).

The Manufacturer will bear no other expense (i.e. labor costs of any kind) and the Purchaser's exclusive remedy, in lieu of all incidental, special, or consequential damages, including damages, is limited to a refund or the furnishing of another product as heretofore described."

The plaintiffs are the original owners and purchased their townhome in 1994. They allege they replaced windows with failed seals in 2000, 2001 and the spring and summer of 2004. These windows were replaced free of charge; however, the plaintiffs allege defendants failed to pay for labor and shipping costs. The plaintiffs further allege that the windows are "consumer products" as defined in the Magnuson-Moss Warranty Federal Trade Improvement Act, (15 U.S.C. §2301 et seq. (2000)) and "goods" as defined in the Uniform Commercial Code (810 ILCS 5/2-105 (1) (West 2006)). Plaintiffs seek to enforce the terms of the applicable written warranty under the statutory standards set forth in the Magnuson-Moss Warranty Federal Trade Improvement Act (MMWA) and Uniform Commercial Code (UCC). Plaintiffs argue these standards require

defendant to pay for shipping and labor costs. Plaintiffs further argue that these standards require defendant to provide a lifetime warranty. The plaintiffs claim defendant breached the warranty under the UCC and under the MMWA. The plaintiffs further claim the defendant breached the express warranty.

The plaintiffs argue that the windows at issue are a "consumer product" so that the warranty given by the defendant is covered by the MMWA. The plaintiffs do not cite authority for this position. We find no authority and conclude this is an issue of first impression. The issue is whether the windows installed in the new construction of a home are a "consumer product" as defined by the MMWA so that an action based upon a written contract for the windows of a home may lie as a matter of law where the written contract contains a 10-year defect-free warranty on workmanship and materials.

The defendant has treated the regulations of the Federal Trade Commission (FTC) as evidencing the meaning of the statute where no court has interpreted its meaning. The interpretation and construction of a statute by an agency charged with its administration is entitled to great weight. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 98 (1992). We will similarly treat the FTC regulations as correctly interpreting the intention of Congress.

The MMWA defines "consumer product" as "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed.") 15 U.S.C. §2301(1). The term "consumer"

4

1-06-0753

means "a buyer (other than for purposes of resale) of any consumer product, any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract)." 15 U.S.C. §2301(3) (2000). The term "supplier" means "any person engaged in the business of making a consumer product directly or indirectly available to consumers." 15 U.S.C. §2301(4) (2000).

The relevant FTC regulations are:

"(a) The Act applies to written warranties on tangible personal property which is normally used for personal, family, or household purposes. This definition includes property which is intended to be attached to or installed in any real property without regard to whether it is so attached or installed. This means that a product is a 'consumer product' if the use of that type of product is not uncommon. The percentage of sales or the use to which a product is put by any individual buyer is not determinative. For example, products such as automobiles and typewriters which are used for both personal and commercial purposes come within the definition of consumer product. Where it is unclear whether a particular product is covered under the definition of consumer product, any ambiguity will be resolved in favor of coverage.

\*\*\*

(c) The definition of 'Consumer product' limits the applicability of the Act to personal property, 'including any such property intended to be attached to or installed in any real

5

property without regard to whether it is so attached or installed.' ***

*** 

(e) The coverage of building materials which are not separate items of equipment is based on the nature of the purchase transaction. An analysis of the transaction will determine whether the goods are real or personal property. The numerous products which go into the construction of a consumer dwelling are all consumer products when sold 'over the counter,' and as by hardware and building supply retailers. This is also true where a consumer contracts for the purchase of such materials in connection with the improvement, repair, or modification of a home (for example, paneling, dropped ceilings, siding, roofing, storm windows, remodeling). However, where such products are at the time of sale integrated into the structure of a dwelling they are not consumer products as they cannot be practically distinguished from realty. Thus, for example, the beams, wallboard, wiring, plumbing, windows, roofing, and other structural components of a dwelling are not consumer products when they are sold as part of real estate covered by a written warranty. 16 C.F.R. §700. (2007)

It is apparent from the FTC regulations that products intended to be attached to or installed in any real property are consumer products subject to the MMWA Section 700.1(e) attempts to specify which products that become a part of the realty are consumer products and which are not. If the consumer contracts for the purchase of such materials in connection with the improvement, repair or modification of a home, then the materials are consumer products subject to the MMWA. However, if at the time of sale the products are integrated into the structure of

the dwelling, they are not consumer products as they cannot be practically distinguished from realty.

It appears that as to products that become a part of realty, the distinction drawn is whether the product is being added to an already existing structure or whether it is being utilized to create the structure. The windows here were installed to create the structure. We conclude that the windows at issue here are not a consumer product. Accordingly, we find the plaintiffs do not have a claim under the Magnuson-Moss Warranty Act.

We next address whether the plaintiffs have a valid claim under the UCC. The UCC applies to all contracts for the sale of goods. The UCC defines "goods" as follows:

> "(1) 'Goods' means all things, including specially manufactured goods, which are moveable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action. 'Goods' also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the section on goods to be severed from realty (Section 2-107)." 810 ILCS 5/2-105 (West 2006).

Section 2-107(1) provides that in a contract for the sale of a structure or its materials, if the items are to be removed and severed from the realty by the seller, the items will be considered "goods."

Windows may be goods when they are movable objects not attached to real estate; however, when by their physical annexation to real estate they have become, in legal contemplation, part of the real estate, they are no longer goods within the meaning of the UCC. Accordingly, we find the plaintiffs do not have a valid claim under the UCC.

For the foregoing reasons, we affirm the judgment of the circuit court.

AFFIRMED.

O'BRIEN and GALLAGHER, JJ., concur.