766 N.W.2d 128 (2009)
277 Neb. 928
Matthew WILSON and Linda Wilson, appellants,
v.
SEMLING-MENKE COMPANY, INC., appellee.
No. S-08-985.
Supreme Court of Nebraska.
June 12, 2009.
*129 Brian J. Adams, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., Lincoln, for appellants.
V. Gene Summerlin, of Ogborn, Summerlin & Ogborn, P.C., Lincoln, for appellee.
HEAVICAN, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
HEAVICAN, C.J.

INTRODUCTION
Matthew Wilson and Linda Wilson appeal the decision of the Otoe County District Court to grant a directed verdict on one of their two claims against Semling-Menke Company, Inc. (SEMCO). The Wilsons filed a breach of warranty claim for their allegedly defective windows under the Nebraska Uniform Commercial Code (U.C.C.), Neb. U.C.C. § 2-313 (Reissue 2001), and a breach of written warranty claim under the federal Magnuson-Moss Warranty Act (the MMWA), 15 U.S.C. §§ 2301 to 2312 (2006). SEMCO, the manufacturer, had refused to replace or repair the windows after the Wilsons claimed the windows leaked, causing damage to their home. At the close of the *130 Wilsons' case in chief, SEMCO moved for a directed verdict on both claims.
The district court granted SEMCO a directed verdict for the breach of written warranty claim under the MMWA, finding that the windows were not "consumer products" as required to establish a prima facie claim. The jury found for the Wilsons on the U.C.C. claim and awarded damages. The Wilsons now appeal, arguing the district court's decision to grant a directed verdict on the MMWA claim was in error. We reverse the decision of the district court and remand the cause for proceedings consistent with this opinion.

FACTS
Matthew and Linda purchased a vacant lot and built a house in Otoe County, Nebraska, beginning in 1998. At the time, the Wilsons owned and operated Genesis Homes, a corporation in the business of building houses. Linda was the general contractor for homes built by Genesis Homes, which position involved planning and overseeing the construction process as a whole. The Wilsons purchased the lot for the purpose of building their own home, and they acted as general contractors. The Wilsons took out the construction loan in their own names. Genesis Homes did not contribute funds.
The windows in question were purchased at ABC Supply Company (ABC) early in 2000, and Linda was assisted by Jay Small in choosing the windows. Linda had previously purchased supplies from ABC and had been assisted by Small in the past in her capacity as general contractor for Genesis Homes. The Wilsons eventually purchased 22 SEMCO windows for installation in their new home.
At trial, Linda testified that she and Matthew were specifically looking for sturdy windows able to withstand high winds. Linda communicated this desire to Small, as well as the fact that the windows were for a private dwelling and not for a home she was building for someone else. Small recommended SEMCO windows. Linda had never heard of SEMCO windows before that time. According to Linda, Small stated that he had received training at the SEMCO factory and that SEMCO windows were built to withstand high winds. Linda testified that the reported ability of SEMCO windows to withstand high winds, as well as the written warranty, influenced her decision to purchase the windows.
In his deposition, Small testified that ABC supplies contractors and is a wholesale service, although ABC occasionally makes retail sales. Small also testified that he had previously dealt with Linda as a representative of Genesis Homes. Small stated he was aware that the sale of the SEMCO windows at issue in this case was for Linda's private home. Small also received a commission for the sale, which was apparently not typical for a retail sale. At ABC, retail products are sold at a 15-to 30-percent markup from wholesale goods. The Wilsons did not pay retail price.
The invoice in the record lists Genesis Homes as the purchaser, although Linda testified at trial that Genesis Homes did not purchase the windows and that she and Matthew purchased the windows out of their own funds. Linda testified that Genesis Homes had an account at ABC for several years before purchasing the windows and that she did not have an account at ABC in her own name. Linda stated that prior to building their private residence, she had rarely used the account at ABC to purchase anything for personal use. Linda testified that she had experienced a delay in receiving and installing the windows because of defects discovered by ABC. Linda also testified that after installation, the windows leaked water *131 and air, but the Wilsons did not identify the windows as being the source of the problem until 2003.
According to the Wilsons, the bulk of the damage took place during a storm on May 22, 2004. Linda testified that water had soaked through the carpeting in many areas of the house and that there were no holes in the house and no broken windows. Linda testified that she had seen water drip through the windows and that they had cleaned up as best they could the night of the storm. In addition to water on the carpet, drywall and insulation had to be replaced or repaired.
The Wilsons contacted SEMCO after the storm, and 4 to 6 weeks later, SEMCO sent a representative to their home. There was conflicting evidence at trial as to what the Wilsons told the representative about when the windows began to leak, but SEMCO never repaired or replaced the windows.
At the close of the Wilsons' case in chief, SEMCO made a motion for a directed verdict as to both counts. The district court denied the motion as to the U.C.C. claim, but granted the motion as to the federal claim. The district court found that as a matter of law, the windows were not "consumer products" as required for recovery under the MMWA. The jury found for the Wilsons on the U.C.C. claim and awarded damages in the amount of $27,246.35. The sole issue before this court is whether the windows were "consumer products" as required under the MMWA.

ASSIGNMENT OF ERROR
The Wilsons claim the district court erred when it found that the windows were not consumer products as a matter of law.

STANDARD OF REVIEW
Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the trial court.[1]

ANALYSIS
The MMWA provides a remedy for consumers who have suffered damages from a defective product when that product was covered by a written warranty. The purpose of the MMWA was "(1) to make warranties on consumer products more readily understood and enforceable and (2) to provide the Federal Trade Commission (FTC) with means of better protecting consumers."[2] Under § 2304 of the MMWA, a warrantor must, at the least, remedy a defective product in a reasonable amount of time, and if it cannot be repaired, the consumer may elect either replacement or a refund. If the warrantor fails to repair the product in a reasonable amount of time, then the consumer may recover incidental expenses associated with that failure. And under § 2310 of the MMWA, a consumer may recover damages and attorney fees if he or she prevails in a civil suit.
In order for the MMWA to apply, the purchaser must be a "consumer" of a "consumer product" as those terms are defined under the MMWA. Section 2301(1) defines "consumer product" as "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in any real property without regard to whether it is so *132 attached or installed)." Section 2301(3) defines "consumer" as
a buyer (other than for purposes of resale) of any consumer product, any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract).
In this case, the district court found that the windows sold by SEMCO to the Wilsons were not consumer products as defined under the MMWA. Relying in part on the Federal Trade Commission regulations explaining consumer products, the district court found the MMWA inapplicable. The pertinent Federal Trade Commission regulation, 16 C.F.R. § 700.1 (2009), further defines the products covered by the MMWA:
(a) The [MMWA] applies to written warranties on tangible personal property which is normally used for personal, family, or household purposes. This definition includes property which is intended to be attached to or installed in any real property without regard to whether it is so attached or installed. This means that a product is a "consumer product" if the use of that type of product is not uncommon.... Where it is unclear whether a particular product is covered under the definition of consumer product, any ambiguity will be resolved in favor of coverage.

....
(e) The coverage of building materials which are not separate items of equipment is based on the nature of the purchase transaction. An analysis of the transaction will determine whether the goods are real or personal property. The numerous products which go into the construction of a consumer dwelling are all consumer products when sold "over the counter," as by hardware and building supply retailers.... However, where such products are at the time of sale integrated into the structure of a dwelling they are not consumer products as they cannot be practically distinguished from realty. Thus, for example, the beams, wallboard, wiring, plumbing, windows, roofing, and other structural components of a dwelling are not consumer products when they are sold as part of real estate covered by a written warranty.

(f) In the case where a consumer contracts with a builder to construct a home, a substantial addition to a home, or other realty (such as a garage or an in-ground swimming pool) the building materials to be used are not consumer products. Although the materials are separately identifiable at the time the contract is made, it is the intention of the parties to contract for the construction of realty which will integrate the component materials. Of course, as noted above, any separate items of equipment to be attached to such realty are consumer products under the [MMWA].
(Emphasis supplied.)
The Wilsons point to the language in 16 C.F.R. § 700.1(a), which states that "any ambiguity will be resolved in favor of coverage." They point out that Linda purchased the windows for a personal residence to be built using the Wilsons' private funds. Although Linda used Genesis Homes' account at ABC to purchase the windows in question, that was the extent to which Genesis Homes was involved.
SEMCO, in turn, argues that the Wilsons purchased the windows at wholesale price, utilizing Genesis Homes' account *133 with ABC, and further contends that other courts have reached similar decisions. The case relied upon by the district court in reaching this decision, Illinois ex rel. Mota v. Central Sprinkler Corp.,[3] is readily distinguishable. In that case, the State of Illinois bought indoor sprinkler systems specifically designed to be used in institutional settings, such as mental institutions or correctional facilities. The court found that the sprinklers could not be considered a "consumer product."
The court in Central Sprinkler Corp. made the point that the sprinklers "[could not] be bought by consumers `over the counter' and [were] not built into consumer dwellings or homes, but rather into commercial or industrial buildings."[4] Under the right circumstances, SEMCO windows could be considered to be consumer products under that standard, because they could be purchased in a sale "over the counter" and are designed to be used in consumer dwellings and homes.
Weiss v. MI Home Products, Inc.[5] is cited by SEMCO as being dispositive. In that case, the windows were installed during construction and plaintiffs purchased the finished townhome. After discovering that the windows were defective, plaintiffs attempted to recover under the MMWA, claiming the windows were "consumer products." The court classified the issue as "whether the windows installed in the new construction of a home are a `consumer product' as defined by the MMWA."[6] The court went on to state:
It appears that as to products that become a part of realty, the distinction drawn is whether the product is being added to an already existing structure or whether it is being utilized to create the structure. The windows here were installed to create the structure. We conclude that the windows at issue here are not a consumer product.[7]
The Wilsons argue that Weiss is inapplicable because plaintiffs in Weiss purchased the finished townhome, whereas the Wilsons purchased the windows separately. And, as already mentioned, 16 C.F.R. § 700.1(e) indicates that building materials sold in an over-the-counter retail sale will be considered "consumer products," even if they are eventually integrated into a finished building, and that it is the nature of the sale that must be analyzed. Furthermore, 16 C.F.R. § 700.1(f) appears to contemplate a contract between a buyer and a builder, which was present in Weiss, but no contract was present in this case.
Although there is some ambiguity as to whether the windows can be considered "consumer products," 16 C.F.R. § 700.1(a) clearly states that "[w]here it is unclear whether a particular product is covered under the definition of consumer product, any ambiguity will be resolved in favor of coverage." Under these circumstances, the purchase of the windows resembled a purchase "over the counter" more than it resembled a purchase by a contractor, as is required under 16 C.F.R. § 700.1(e) for building materials to be considered "consumer products."
Linda clearly expressed her intent to use the windows in the Wilsons' private residence, and the salesperson at ABC testified he was aware of Linda's intention. Linda used the Wilsons' own funds to pay for the windows, rather than using funds *134 from the Genesis Homes' account. The Wilsons relied on the existence of a written warranty when purchasing the windows. They did not have a contract with a builder for the house as a whole, but instead purchased the windows separately. We find that under these circumstances, the windows purchased by the Wilsons were "consumer products" as a matter of law.

CONCLUSION
The purpose of the MMWA is to protect consumers and to give consumers a remedy for enforcing written warranties. We find that under these facts, the Wilsons were consumers who purchased the windows as consumer products in a sale "over the counter" as defined by the MMWA. We therefore reverse the district court's order granting a directed verdict to SEMCO on the Wilsons' claim under the MMWA. We remand the cause to the district court for proceedings consistent with this opinion.
REVERSED AND REMANDED.
WRIGHT, J., not participating.
NOTES
[1] Japp v. Papio-Missouri River NRD, 271 Neb. 968, 716 N.W.2d 707 (2006).
[2] Illinois ex rel. Mota v. Central Sprinkler Corp., 174 F.Supp.2d 824, 827 (C.D.Ill.2001).
[3] Central Sprinkler Corp., supra note 2.
[4] Id. at 831-32.
[5] Weiss v. MI Home Products, Inc., 376 Ill. App.3d 1001, 877 N.E.2d 442, 315 Ill.Dec. 690 (2007).
[6] Id. at 1003, 877 N.E.2d at 444, 315 Ill.Dec. at 692.
[7] Id. at 1005, 877 N.E.2d at 445, 315 Ill.Dec. at 693.