# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3093

JOHN P. MILLER,

*Plaintiff-Appellant,*

*v.*

JAMES G. HERMAN, et al.,

*Defendants-Appellees,*

and

PELLA PRODUCTS, INC.,

*Defendant/Third-Party Plaintiff-Appellee,*

and

JOSEPH NOBILIO CARPENTERS,

*Third-Party Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 3573—**Wayne R. Andersen**, *Judge.*

ARGUED JANUARY 13, 2010—DECIDED MARCH 25, 2010

Before BAUER, MANION, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.*   Appellant John P. Miller con-
tracted with appellee James G. Herman for the construc-
tion of a new home. Herman installed Pella windows in
the home as part of that contract, and, according to
Miller, the windows have leaked, causing him personal
and property damage. He brought this action against
Herman, Herman's construction company, James G.
Herman & Associates, and Pella Products, Inc. ("Pella")
pursuant to the Magnuson-Moss Warranty—Federal Trade
Commission Improvement Act, 15 U.S.C. §§ 2301-2312
("Magnuson-Moss" or "the Act"), and various Illinois
law theories. On motion by Herman and Herman &
Associates, the district court dismissed the suit for lack
of subject matter jurisdiction. Miller appeals. We affirm
the dismissal of the Magnuson-Moss claims on modified
grounds, though we vacate the dismissal of Miller's
state law claims and any related crossclaims, third-party
claims, and counterclaims, and order a limited remand
so the district court can determine whether it should
exercise supplemental jurisdiction over them.

## I. BACKGROUND

In April 2003, John P. Miller and his then-wife Terese
Miller entered into an oral contract with builder James G.
Herman and his company, James G. Herman & Associates,
for the construction of a new, custom-built, $497,700.38
home in Lakemoor, Illinois. (We recite the facts as the
Millers allege, with all reasonable inferences in their
favor.) In mid-June 2003, Herman purchased for the

Millers' home windows and doors (collectively "windows") manufactured and warranted by Pella Products. As construction of the home progressed, Herman and subcontractor Joseph Nobilio installed the windows into the nascent structure.

From the time of their installation in summer 2003 through December 2003, when Herman completed the home and represented to the Millers that it was habitable, the windows leaked and allowed water into the home. The Millers complained to Herman and Pella, and in response Herman caulked around the windows. The Miller family moved into the home sometime thereafter. Notwithstanding the additional caulking, the windows continued to leak. Mold growing in the home eventually caused the Millers' daughter to have an asthma attack and prompted the Millers to seek professional mold remediation.

In April 2005, the Millers contacted Pella and requested that it inspect a casement window in the basement of the home. Pella sent two representatives to the home, and they removed and inspected the window as requested. They observed water damage and concluded that it had been caused by faulty installation rather than a defective window. They reinstalled the window, but Miller alleges that they, too, deviated from Pella's official installation instructions. There is no indication that the Millers asked for, or that Pella performed, any inspection or reinstallation of the other windows.

The windows continued to leak, and the Millers eventually filed a complaint in Illinois state court. They voluntarily dismissed that complaint, however, to pursue the

present action against Herman, Herman & Associates, and Pella in the Northern District of Illinois, where they filed an eight-count complaint. Four of the counts, Counts I-IV, sounded in state law against Herman: breach of contract, breach of the implied warranty of habitability, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, and common law fraud. Count VIII, products liability, was levied against Pella. The remaining three counts, Counts V, VI, and VII, in the Millers' view provided the requisite jurisdictional hook to carry the lot into federal court. All three, Count V against Herman and Counts VI and VII against Pella, were breach of warranty claims pleaded with reference to Magnuson-Moss, which provides a civil cause of action for consumers "damaged by the failure of a supplier, warrantor, or service contractor to comply with any [Act] obligation . . . *or* under a written warranty, implied warranty, or service contract . . . ." 15 U.S.C. § 2310(d)(1) (emphasis added). The Act's "unusual jurisdictional clause," quoted in the preceding sentence, permits "an aggrieved customer [to] sue on state-law claims in federal court, whether or not the parties are of diverse citizenship." *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 956 (7th Cir. 1998). Indeed, Counts V and VI both allege breaches of Illinois warranty law. The only requirements a non-class-action plaintiff must meet to get state law warranty claims into federal court under Magnuson-Moss both relate to the amount in controversy: the amount in controversy of each claim must exceed $25, and the total amount in controversy, exclusive of interests and costs, must be at least $50,000. 15 U.S.C. § 2310(d)(3).

Herman & Associates moved to dismiss the Millers'
complaint for lack of subject matter jurisdiction. *See* Fed.
R. Civ. P. 12(b)(1). It did not argue that the amount-in-
controversy requirements had not been satisfied,[1] but
instead asserted that the district court lacked subject
matter jurisdiction because the windows installed in the
Millers' home were not "consumer products" within the
meaning of the Act. *See* 15 U.S.C. § 2301(1); 16 C.F.R.
§ 700.1. Since the Millers were not raising complaints
related to "consumer products," Herman & Associates
reasoned, Magnuson-Moss did not apply to the claim and
thus there was no federal question jurisdiction under
28 U.S.C. § 1331. And if that were the case, the district
court would be unable to exercise supplemental juris-
diction over the state law claims pursuant to 28 U.S.C.

[1] Although the Millers failed to assign specific dollar values to
the damages alleged in their complaint, and failed to even
mention the amount-in-controversy requirement, we conclude
that it has been satisfied here. *See Flying J Inc. v. City of New
Haven*, 549 F.3d 538, 544 (7th Cir. 2008) (noting that we are
"obliged to consider" subject matter jurisdiction "at any point
in the litigation"). These were pricey windows, and the Millers
also alleged consequential and incidental damages (which
are recoverable under Illinois warranty law, upon which two
of the three Magnuson-Moss claims are based). "When the
jurisdictional threshold is uncontested, we generally will
accept the plaintiff's good faith allegation of the amount in
controversy unless it appears to a legal certainty that the claim
is really for less than the jurisdictional amount." *McMillian
v. Sheraton Chi. Hotel & Towers*, 567 F.3d 839, 844 (7th Cir.
2009) (quotations omitted).

§ 1367(a). *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes it lacks subject matter jurisdiction, the court must dismiss the complaint in its entirety."). (Diversity jurisdiction, 28 U.S.C. § 1332, is of no concern here because Miller, Herman, and Herman & Associates all hail from Illinois.) The Millers filed a reply to the motion in which they argued, citing state case law and Federal Trade Commission ("FTC") interpretations, that the windows were consumer products. Shortly thereafter, the district court denied Herman & Associates' motion with the enigmatic explanation that its ruling was "based on our reading of the Magnuson-Moss Warranty Act."

Eight months later, Herman & Associates, this time in conjunction with Herman, again moved to dismiss the complaint on Rule 12(b)(1) grounds. The Herman defendants asked the court to reconsider its earlier decision in light of an Illinois Appellate Court decision holding that windows installed in new homes were not "consumer products." *See Weiss v. MI Home Prods., Inc.*, 877 N.E.2d 442, 445 (Ill. App. Ct. 2007). They accompanied their motion with a Fed. R. Civ. P. 56(b) motion for summary judgment on alternative, unrelated grounds.

While the Herman defendants' motions were pending, Pella filed its own Rule 56(b) motion for summary judgment. In its supporting memorandum, Pella raised the same argument that the Herman defendants had raised in the Rule 12(b)(1) context: the windows at issue are not "consumer products." (Pella also adopted, in a footnote, the Herman defendants' motion.) Rather than couching

the argument in jurisdictional terms, Pella asserted that "as a matter of law, the windows and doors at issue in this case are outside of the definition of a consumer product contained in [Magnuson-Moss]. As a result, an essential element of plaintiffs' claim is missing and there are no set of facts under which plaintiffs' claim can succeed." Dkt. No. 94 at 6. Pella cited some of the FTC's interpretations of the Act, *see* 16 C.F.R. § 700.1, and case law, including the *Weiss* case, to support its position. Pella also attached an FTC advisory opinion, 88 F.T.C. 1030, to its memorandum.

The district court ordered consolidated briefing on the Herman defendants' and Pella's motions. The Millers accordingly filed a single universal response memorandum, in which they argued that the windows were "consumer products." They did not address the disparate procedural postures of the motions they were opposing; they simply requested that the district court "deny the Defendants' Motion to Dismiss and Motion for Summary Judgment."

The district court did not accede to the Millers' request. In its memorandum order and opinion, after discussing the FTC's interpretations, 16 C.F.R. § 700.1(e) and (f), the district court concluded:

> We find that the Millers contracted with Herman for the construction of a new home, not for the individual sale of windows. Because those windows were intended to be integrated into the Millers' home, we find that they do not constitute "consumer products" under the Magnuson-Moss

Act, but are instead building materials indistin-
guishable from the real property. Thus, the Millers
have no valid claims under the Magnuson-Moss
Act, and this court therefore lacks subject matter
jurisdiction over any of the Millers' claims. Ac-
cordingly, Herman's motion to dismiss this case
is granted. We note that the defendants have also
moved for summary judgment on the Millers' state
law claims. The defendants may reassert those
arguments in state court should the Millers
choose to refile their state law claims in state court.
For the foregoing reasons, defendants James G.
Herman's and James G. Herman & Associates,
Inc.'s motion to dismiss for lack of subject matter
jurisdiction is granted. This case is terminated.

*Miller v. Herman*, No. 06 C 3573, 2008 WL 4889094, at *3
(N.D. Ill. July 15, 2008). The district court later clarified that
its pronouncement of termination (and entry of final
judgment) applied to all defendants and encompassed
all motions and claims pending before it, including
Pella's motion for summary judgment.

## II. DISCUSSION

### A. Magnuson-Moss Claims

John Miller, who after the Millers' recent divorce solely
holds all obligations and rights associated with the
home, including those stemming from this action, now
appeals. He argues, as he did before the district court,
that the windows Herman and Nobilio installed in his

home are "consumer products" that entitle him to the benefits and protections of the Magnuson-Moss Act. Before we reach that argument, however, we address a procedural hiccup that entered this case as part and parcel of Herman & Associates' first motion to dismiss. Since that motion, the "consumer product" debate at the heart of this case has been framed as a jurisdictional question.[2] But because Miller must show that the windows are a consumer product to prevail, and not just to get into federal court, *see* 15 U.S.C. § 2310(d), the Herman defendants' Rule 12(b)(1) motion was in fact an indirect attack on the merits of Miller's case. *See Gentek Bldg. Prods., Inc. v. The Sherwin-Williams Co.*, 491 F.3d 320, 331 (6th Cir. 2007) ("To establish a Magnuson-Moss claim, a plaintiff must show that the item at issue was a 'consumer product.' This disputed fact therefore goes to the merits."); *Miller v. Willow Creek Homes, Inc.*, 249 F.3d 629, 632 (7th Cir. 2001) (noting that it would "not reach the merits" of the dispute but nonetheless commenting that "it seems doubtful at best that a court would find the mobile home in question to be a consumer product covered by the Act").

The conflation of jurisdictional and non-jurisdictional limitations on causes of action is not an uncommon occurrence. Indeed, the Supreme Court has taken up the issue on several occasions, as have we. *See, e.g., Reed*

---

[2] We note that Pella (correctly) characterized the issue as merits-based rather than jurisdictional in its motion for and memorandum in support of summary judgment. Dkt. Nos. 94 & 95.

*Elsevier, Inc. v. Muchnick*, No. 08-103, 2010 WL 693679, at *8, *11 (U.S. Mar. 2, 2010) (holding that the registration requirement in 17 U.S.C. § 411(a) of the Copyright Act "imposes a precondition to filing a claim" and "does not restrict a federal court's subject-matter jurisdiction"); *Arbaugh*, 546 U.S. at 511 (recognizing the "subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy" and noting that "[s]ubject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by a federal law asserted as the predicate for relief—a merits-related determination" (quotation omitted)); *Bell v. Hood*, 327 U.S. 678, 682 (1946) ("Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover."); *Williams v. Fleming*, No. 09-2410, 2010 WL 668889, at *3-*4 (7th Cir. Feb. 26, 2010) (holding that in the context of the Federal Tort Claims Act, claims dismissed on sovereign immunity grounds are "not dismissed for lack of jurisdiction, but for the existence of a defense"); *Doss v. Clearwater Title Co.*, 551 F.3d 634, 638-39 (7th Cir. 2008) (discussing 15 U.S.C. § 1635(f) and concluding that there is "nothing jurisdictional" about it).

The Supreme Court has provided a "readily administrable bright line" test to resolve the question of whether a provision is jurisdictional. *Arbaugh*, 546 U.S. at 516. Under that test,

> [i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly

> instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

*Id.* at 515-16 (citations omitted). The Court has also explained that the location of statutory requirements can be instructive; when requirements are in provisions "separate" from a statute's "jurisdiction-granting section," *Reed Elsevier*, 2010 WL 693679, at *6, that is some indication that the requirements are not jurisdictional, *see id.* (citing *Arbaugh*, 546 U.S. at 514-15). Applying these principles here confirms that Magnuson-Moss's "consumer products" requirement, *see* 15 U.S.C. §§ 2301-2305, 2308, is not jurisdictional. Neither the definition of consumer products, § 2301(1), nor the provisions that set out rules governing warranties of consumer products, §§ 2302-2305, 2308, "clearly state" that they are jurisdictional. We thus treat them as "nonjurisdictional in character." In contrast, § 2310(d)(1) has the heading "Jurisdiction" and grants "appropriate district court[s] of the United States" the ability to hear claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (stating that "subject-matter jurisdiction" refers to "the courts' statutory or constitutional *power* to adjudicate the case"). Moreover, the term "consumer product" does not appear in the jurisdictional provision; it is used only in separate sections of the Act. We therefore conclude that whether an item is a "consumer product" is not a jurisdictional requirement of the Magnuson-Moss Act. Thus, the Herman defendants' filing before the district court was, despite

its label, more properly considered as a motion to dismiss for failure to state a claim. *Reynolds v. United States,* 549 F.3d 1108, 1111-12 (7th Cir. 2008); *see also Palay v. United States*, 349 F.3d 418, 424-25 (7th Cir. 2003); *Health Cost Controls v. Skinner*, 44 F.3d 535, 538 (7th Cir. 1995) ("This Court ordinarily may modify a dismissal for lack of jurisdiction and convert it to a dismissal on the merits if warranted."); *Peckmann v. Thompson*, 966 F.2d 295, 297 (7th Cir. 1992) ("If a defendant's Rule 12(b)(1) motion is an indirect attack on the merits of the plaintiff's claim, the court may treat the motion as if it were a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.").

Yet a Rule 12(b)(6) motion must be decided solely on the face of the complaint and any attachments that accompanied its filing. *See* Fed. R. Civ. P. 10(c), 12(d); *Segal v. Geisha NYC LLC*, 517 F.3d 501, 504-05 (7th Cir. 2008). Here, "matters outside the pleadings were presented to and not excluded by the court," so "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(d). There is no problem construing the motion as one for summary judgment here; "[a]dequate notice is provided when the moving party frames its motion in the alternative as one for summary judgment," *Tri-Gen Inc. v. Int'l Union of Operating Eng'rs, Local 150*, 433 F.3d 1024, 1029 (7th Cir. 2006), and not only did the Herman defendants do just that, but Pella also explicitly filed a motion requesting summary judgment on identical grounds to those asserted in the Rule 12(b)(1) motion. Moreover, Miller responded to the motions collectively and universally, and

had the opportunity to "present all the material that is pertinent to" a summary judgment motion. Fed. R. Civ. P. 12(d); *see also Malak v. Assoc. Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 1986).

Our review is thus de novo (as it would have been under a Rule 12(b)(1) or Rule 12(b)(6) motion as well), and summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c); *Reget v. City of La Crosse*, No. 06-1621, 2010 WL 424581, at *2 (7th Cir. Feb. 8, 2010). We construe all facts in the light most favorable to Miller and draw all reasonable inferences in his favor. *Id.*

Here, the Herman defendants moved to dismiss on the theory that Miller's windows were not—and could not be—"consumer products" giving rise to a Magnuson-Moss cause of action. Pella cited the same grounds in its motion for summary judgment. The determination of what constitutes a "consumer product" is thus crucial to the resolution of this case. In making that determination, we look first to the definition of "consumer product" provided in the Magnuson-Moss Warranty Act. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002). The definition, "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed)," 15 U.S.C. § 2301(1), is on its face

expansive but the extent of its intended scope is some-what hazy. To clarify the meaning of § 2301 and other provisions, the FTC, in connection with its authority to implement the Act, *see* 15 U.S.C. § 2312(c), issued "inter-pretations" in 1977 via notice-and-comment procedures, *see* 42 Fed. Reg. 36112, 36112 (July 13, 1977). The inter-pretations are codified at 16 C.F.R. § 700.1, and both Miller and the appellees direct our attention to them.

In the FTC's own words, its Magnuson-Moss interpreta-tions are "advisory in nature," are not "substantive rules," and lack "the force or effect of statutory provisions." 42 Fed. Reg. 36112, 36112 (July 13, 1977). The FTC's inter-pretations consequently may not be entitled to full *Chevron* deference, *see Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984)), but "an agency's interpretation may merit some deference whatever its form, given the specialized experience and broader investigations and information available to the agency, and given the value of uniformity in its administrative and judicial understandings of what a national law re-quires," *United States v. Mead Corp.*, 533 U.S. 218, 234 (2001) (citations and quotations omitted). We have looked favorably upon these very interpretations in the past, *see Waypoint Aviation Servs. Inc. v. Sandel Avionics, Inc.*, 469 F.3d 1071, 1073 (7th Cir. 2006) (citing 16 C.F.R. § 700.1(d)), and we acquiesce to the parties' requests to consult them here because they have "power to persuade," *Christensen*, 529 U.S. at 587 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

An interpretation's "power to persuade" is measured by numerous factors, including "the thoroughness evident in its consideration, the validity of its reasoning, [and] its consistency with earlier and later pronouncements." *Skidmore*, 323 U.S. at 140; *Joseph v. Holder*, 579 F.3d 827, 832 (7th Cir. 2009); *see also Mead*, 533 U.S. at 228 (citing the degree of an agency's care, consistency, formality, and relative expertise as factors affecting the "fair measure of deference" due). Those factors tilt strongly in favor of deference here. The FTC was responsible for implementing the Act. 15 U.S.C. § 2312(c); *see also Carcieri v. Salazar*, 129 S. Ct. 1058, 1065 n.5 (2009) (noting that a commissioner's responsibilities relating to the implementation of the Indian Reorganization Act of 1934 rendered his interpretations of the statute "unusually persuasive" but not deferring because the statute was unambiguous); *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 414 (1993) ("[W]e generally defer to a permissible interpretation espoused by the agency entrusted with its implementation."). The FTC promulgated the interpretations using notice-and-comment procedures even though it was not required to do so. *See Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 173 (2007); *White v. Scibana*, 390 F.3d 997, 1000-01 (7th Cir. 2004). It has adhered to its interpretative positions consistently since the 1970s, even after soliciting comments on them repeatedly in the late 1990s. 64 Fed. Reg. 19700, 19700 (Apr. 22, 1999); *see also Good Samaritan Hosp.*, 508 U.S. at 417 ("[T]he consistency of an agency's position is a factor in assessing the weight that position is due."). And it grounded its reasoning in Magnuson-Moss's legislative history. *See* 64 Fed. Reg.

19700, 19702-03 (Apr. 22, 1999). These considerations lead us to give the interpretations a reasonably high degree of deference. *See Skidmore*, 323 U.S. at 140.

Miller asserts that 16 C.F.R. § 700.1(e) is the interpretation most pertinent to this case. It provides:

> The coverage of building materials which are not separate items of equipment is based on the nature of the purchase transaction. An analysis of the transaction will determine whether the goods are real or personal property. The numerous products which go into the construction of a consumer dwelling are all consumer products when sold "over the counter," as by hardware and building supply retailers. This is also true where a consumer contracts for the purchase of such materials in connection with the improvement, repair, or modification of a home (for example, paneling, dropped ceilings, siding, roofing, storm windows, remodeling). However, where such products are at the time of sale integrated into the structure of a dwelling they are not consumer products as they cannot be practically distinguished from realty. Thus, for example, the beams, wallboard, wiring, plumbing, windows, roofing, and other structural components of a dwelling are not consumer products when they are sold as part of real estate covered by a written warranty.

In Miller's view, the fact that the windows were purchased to be installed into the house at a later time renders the transaction here an "over the counter" transaction like

that contemplated in 16 C.F.R. § 700.1(e). He likens his situation to that of the plaintiffs in *Wilson v. Semling-Menke Co.*, 766 N.W.2d 128 (Neb. 2009), one of whom, Linda, served as the general contractor of the house they were having built for themselves. Linda went to a building supply store and purchased twenty-two windows, which were later installed into the house and, like those at issue here, allegedly allowed water into the structure. *See id.* at 130. The Wilsons brought suit under Magnuson-Moss, alleging the windows were consumer goods, and the Nebraska Supreme Court ultimately ruled in their favor. Citing 16 C.F.R. § 700.1(e), that court concluded that the Wilsons' purchase of the windows rendered them "consumer products" because it "resembled a purchase 'over the counter' more than it resembled a purchase by a contractor." *Id.* at 133. The court specifically noted that the Wilsons "did not have a contract with a builder for the house as a whole, but instead purchased the windows separately." *Id.* at 134.

We do not find Miller's situation analogous to that faced by the Wilsons, or, more fundamentally, within the purview of 16 C.F.R. § 700.1(e). Miller did not go to the store and engage in a transaction for windows. Instead, he specifically alleged that "*Herman* purchased, on behalf of the Millers, fixed and casement windows and several hinged doors and a slider patio door manufactured by Pella." Compl. ¶ 12 (emphasis added). This allegation is supported by the record: the invoice for the windows lists "Herman, Jim and Associat [sic]," not Miller, as the customer. The only contract alleged here is one between Herman and the Millers, for a home. Herman's separate

purchase of the windows was incidental to that transaction—it did not stand alone. Although Miller technically paid for the windows by supplying Herman with the funds, and may have influenced (or dictated, as Miller asserted at oral argument) Herman's decision to purchase Pella-manufactured windows, when he received the windows they were "integrated into the structure of a dwelling" and could not be "practically distinguished from realty." 16 C.F.R. § 700.1(e). Miller contracted for the windows in connection with the construction of a *new* home, not in connection with the "improvement, repair, or modification" of an *existing* home as contemplated by subsection 700.1(e). *See Muchisky v. Frederic Roofing Co.*, 838 S.W.2d 74, 78 (Mo. Ct. App. 1992) (holding that the shingles used to re-roof an existing home were consumer products and noting that "[i]t appears that as to products which are becoming a part of realty the distinction drawn is whether the product is being added to an already existing structure or whether it is being utilized to create the structure"). Indeed, we agree with the appellees that 16 C.F.R. § 700.1(f), which addresses the situation in which consumers contract for the construction of a new home, is more applicable here.

Subsection 700.1(f) provides:

> *In the case where a consumer contracts with a builder to construct a home, . . . the building materials to be used are not consumer products.* Although the materials are separately identifiable at the time the contract is made, it is the intention of the parties to contract for the construction of realty which will

> integrate the component materials. Of course, as noted above, any separate items of equipment to be attached to such realty are consumer products under the Act.

(emphasis added). This interpretation is a much closer fit to the facts alleged in Miller's complaint. Miller contracted with Herman for a home. He agreed to pay Herman roughly $500,000 for the home under a single contract, not $(500,000-X) for the home under one contract and $X for the windows under another. He expected to (and did) receive a fully, if allegedly poorly, completed home, not an incomplete home accompanied by a stack of uninstalled, nonintegrated windows.

Miller nonetheless asserts that Pella's recognition that the windows are severable from the house—recall that its representatives removed and reinstalled one of the windows—precludes the conclusion that they were integrated into the home. Not only does this argument ignore the crucial distinction embodied in subsection 700.1(f), that a contract for a home supersedes any incidental purchases of individual materials for that home, if taken to its logical conclusion it would obviate the need for many of the FTC's interpretations. For under Miller's logic, every part of every home, preexisting or newly constructed, would be a consumer product, because even elements of homes such as the wiring, walls, or plumbing can be removed and replaced if necessary. *Cf.* 16 C.F.R § 700.1(d) ("The coverage of separate items of equipment attached to real property includes, but is not limited to, appliances and other thermal, mechanical, and

electrical equipment. (*It does not extend to the wiring, plumbing, ducts, and other items which are integral component parts of the structure.*)" (emphasis added)).

We are similarly unpersuaded by Miller's claim that applying subsection 700.1(f) here would undermine subsection 700.1(e). His theory is that subsection (f), taken alone, "proves too much" because it ignores the terms of the contract between the builder and the buyer. He advocates instead for a concurrent reading of subsections (e) and (f), which he asserts was the approach taken by the Nebraska Supreme Court in *Wilson*. The *Wilson* court did indeed take both subsections (e) and (f) into account, but it did not read the provisions concurrently, nor did it elevate one above the other: it simply evaluated both and applied the one that most closely fit the facts before it. The *Wilson* court noted that there was no contract between a buyer and a builder, and explained that "the purchase of the windows resembled a purchase 'over the counter' more than it resembled a purchase by a contractor, as is required under 16 C.F.R. § 700.1(e) for building materials to be considered 'consumer products.'" *Wilson*, 766 N.W.2d at 133.

The *Wilson* court mentioned another FTC interpretation, subsection 700.1(a), which Miller invites us to apply notwithstanding any potential undermining effect it might have on subsections (e) and (f). Subsection 700.1(a) provides that "[w]here it is unclear whether a particular product is covered under the definition of consumer product, any ambiguity will be resolved in favor of coverage." We can envision some situations in which that

interpretation would carry the day, but this is not one of them. Subsections 700.1(e) and (f) expressly provide a framework under which to analyze the "consumer product" status of building materials. The facts pleaded in the complaint in this case are in line with those contemplated by subsection 700.1(f), which resolves any potential ambiguity without the aid of subsection (a). Moreover, even though there is arguably some ambiguity in the case law interpreting subsections (e) and (f), both predominant tests lead to the same result in this case. *Compare Weiss*, 877 N.E.2d at 445 ("[T]he distinction drawn is whether the product is being added to an already existing structure or whether it is being utilized to create the structure."), *Atkinson v. Elk Corp. of Tex.*, 48 Cal. Rptr. 3d 247, 255 (Cal. Ct. App. 2006) ("[W]e find that the crucial distinction is the *time of sale*. If the products are purchased in order to add them to an existing dwelling, then the products are consumer products. If, on the other hand, the products are purchased as part of a larger real estate sales contract, or contract for a *substantial* addition to a home, they are not."), *and Muchisky*, 838 S.W.2d at 78 ("It appears that as to products which are becoming a part of realty the distinction drawn is whether the product is being added to an already existing structure or whether it is being utilized to create the structure. . . . The presence of subsection (f) indicates that the Commission was utilizing 'time of sale' as the entry into a commitment not the completion of the obligation."), *with Illinois ex rel. Mota v. Cent. Sprinkler Corp.*, 174 F. Supp. 2d 824, 831 (C.D. Ill. 2001) ("Whether non-separate items of equipment (integral component parts of the structure, such as wiring,

plumbing, ducts, and other items) are consumer products depends upon how they are purchased."), *and Wilson*, 766 N.W.2d at 133 (examining the nature of the transaction for the windows).

Miller's final argument is that the district court's interpretation of the Act is problematic from a policy standpoint. He claims that under the district court's reasoning, Magnuson-Moss only offers the public the "improper result that a consumer who purchases a component for a home, such as roofing, windows, or a major kitchen appliance, is protected, whereas a consumer who allows any of those items to be actually installed in a new home loses all protection." Appellant's Br. 17. While we agree that the FTC interpretations draw a fine line between building materials that are considered consumer products and those that aren't, we do not move that line merely because we might have drawn it differently. *Cf. Chevron*, 467 U.S. at 866 ("[F]ederal judges—who have no constituency—have a duty to respect legitimate policy choices made by those who do.").

Miller contracted with Herman for the construction of a new home. The home was not existing; the windows at issue here were purchased by Herman, a contractor, to install into the home. Miller has not produced any evidence showing a separate contract for the windows, or a separate transaction for them in which he was personally engaged. Under 16 C.F.R. § 700.1(f) and the existing tests articulated by lower courts who have examined similar issues, the windows are not "consumer products" within the meaning of Magnuson-Moss. Thus Miller's claims fail

as a matter of law and the district court's summary disposal of them, although erroneously phrased as a dismissal for lack of subject matter jurisdiction, was proper. We modify the district court's order to reflect the correct procedural posture and affirm its dismissal of the Magnuson-Moss claims, Counts V, VI, and VII of Miller's complaint.

## B.  State Law Claims

Although the dismissal of Miller's Magnuson-Moss claims was ultimately proper, there remains an issue that requires further consideration by the district court: the dismissal of Miller's state law claims. Since it rested its disposition of the suit on subject matter jurisdiction grounds, the district court believed it had no need to consider whether it should exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, because if there is no subject matter jurisdiction, there can be no supplemental jurisdiction. Where a district court has original jurisdiction over some claims, however, as we have concluded was the case here, it has supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy," 28 U.S.C. § 1367(a), and that supplemental jurisdiction persists even if all the claims giving rise to original jurisdiction have been dismissed, *see id.* § 1367(c)(3); *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 589 F.3d 881, 883 (7th Cir. 2009). It may decline to exercise supplemental jurisdiction in certain situations, *see*

§ 1367(c); that decision is squarely within its discretion, *see Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514 (7th Cir. 2009) (reviewing court's decision to decline supplemental jurisdiction for abuse of discretion).

"Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Id.* (quotation omitted); *see also Leister v. Dovetail, Inc.*, 546 F.3d 875, 882 (7th Cir. 2008) (characterizing this principle as a presumption). This general rule would seem to militate toward the dismissal of Miller's state law claims, particularly since none of them has yet been addressed in any meaningful way. *See Sharp Elecs.*, 578 F.3d at 514-15 (setting out the three "acknowledged exceptions" to the rule). But a district court is never required to relinquish jurisdiction over state law claims merely because the federal claims were dismissed before trial. *Nightingale,* 589 F.3d at 883; *Sharp Elecs.*, 578 F.3d at 514-15. The only requirement is that it make a considered determination of whether it should hear the claims. *See Nightingale*, 589 F.3d at 883 ("It is an abuse of discretion not to exercise discretion.").

Miller has expressed concern, albeit only in the last paragraph of his reply brief, *cf. United States v. Wescott*, 576 F.3d 347, 354 (7th Cir. 2009) ("Arguments raised for the first time in a reply brief are waived."), about the fate of his case if the district court declines to exercise supplemental jurisdiction. He fears that Illinois' "one-refiling" rule, 735 Ill. Comp. Stat. 5/13-217; *see also Carr v. Tillery*, 591 F.3d 909, 914 (7th Cir. 2010) (discussing the one-refiling rule); *Timberlake v. Illini Hosp.*, 676 N.E.2d

634, 636-37 (Ill. 1997), the operation of which was triggered by the Millers' voluntary dismissal of their initial state court action, will prevent him from seeking relief in state court. We do not consider this or any other issue that may bear on the district court's ultimate decision. Whether it chooses to exercise its supplemental jurisdiction is a question the district court must take up in the first instance. We therefore vacate the district court's unconsidered dismissal of Miller's state law claims (and any concomitant crossclaims, counterclaims, and third-party claims) and remand so the district court can determine whether the exercise of supplemental jurisdiction is warranted here and, if necessary, conduct appropriate proceedings incidental to that discretionary determination.

### III. CONCLUSION

The determination that windows are not "consumer products" is properly understood as a merits-based rather than a jurisdictional determination. We MODIFY the judgment of the district court to reflect a dismissal of Miller's Magnuson-Moss claims, Counts V, VI, and VII of the complaint, pursuant to Rule 56, and we AFFIRM as modified. We VACATE the district court's dismissal of Miller's state law claims, Counts I-IV and VIII, and any crossclaims, counterclaims, and third-party claims predicated thereon, and REMAND so the district court may consider whether it should exercise supplemental jurisdiction over the state law claims and any related crossclaims, counterclaims, and third-party claims.